# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1821

_____

| | | |
|---|---|---|
| In re:  Racing Services, Inc., | * | |
| | * | |
| Debtor | * | |
| _____ | * | |
| | * | |
| PW Enterprises, Inc., a Nevada | * | |
| Corporation, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellate Panel for the |
| | * | Eighth Circuit. |
| North Dakota Racing Commission, | * | |
| a regulatory agency; North Dakota | * | |
| Breeders Fund, a special fund; North | * | |
| Dakota Purse Fund, a special fund; | * | |
| North Dakota Promotions Fund, a | * | |
| special fund; State of North Dakota, | * | |
| a governmental entity, | * | |
| | * | |
| Appellees. | * | |
| | * | |
| Kip M. Kaler, Bankruptcy Trustee for | * | |
| Racing Services, Inc. | ____*____ | |

Submitted: January 18, 2008
Filed: August 29, 2008

_____

Before WOLLMAN, BRIGHT, and SMITH, Circuit Judges.

_____

BRIGHT, Circuit Judge.

The Bankruptcy Code expressly authorizes a trustee (or debtor-in-possession) to bring an adversary proceeding to avoid certain transfers as preferential or fraudulent. In some cases, however, courts have allowed creditors to bring such "avoidance claims" if it would benefit the estate. A creditor who brings avoidance claims in place of the trustee is said to possess "derivative standing." In this case, we must decide whether the bankruptcy court erred in holding that, as a matter of law, a creditor may never obtain derivative standing to pursue avoidance claims absent a showing that the trustee was "unable or unwilling" to do so. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1) and now reverse and remand.

**I**

When it was a going concern, debtor Racing Services, Inc. ("Racing Services") operated a horse race wagering service business. On February 3, 2004, Racing Services filed a voluntary Chapter 11 petition for reorganization in the United States Bankruptcy Court for the District of Delaware. The case was subsequently transferred to North Dakota and converted to a liquidation proceeding under Chapter 7 because reorganization was not possible. Appellant PW Enterprises, Inc. ("PW Enterprises") is Racing Services' largest non-governmental creditor and holds an unsecured claim of more than $2 million. PW Enterprises has actively participated in this case, including sitting on the Creditors' Committee when the case was in Chapter 11. Appellees State of North Dakota and affiliated state entities (collectively the "State")[1] assert a $6 million priority tax claim. PW Enterprises argues because of the size of

---

[1]On appeal, the State of North Dakota filed a single brief on behalf of itself and the other Appellee-Defendant state entities: North Dakota Racing Commission, North Dakota Breeders Fund, North Dakota Purse Fund, and North Dakota Promotions Fund.

the State's claim, it (along with the other unsecured creditors) currently stands to recover nothing.

On January 31, 2006, five days before the statute of limitations was to expire, PW Enterprises approached the Chapter 7 Trustee Kip Kaler ("Trustee")[2] and requested that he initiate an adversary proceeding against the State to, among other things, avoid certain preferential and fraudulent transfers made to the State by Racing Services that were, in PW Enterprises' view, improperly classified as "taxes."[3] At the Trustee's request, PW Enterprises prepared a draft complaint for his review. The Trustee declined to bring the specific claims that PW Enterprises wanted him to assert. See PW Enters., Inc. v. North Dakota (In re Racing Servs., Inc.), 363 B.R. 911, 913 (8th Cir. BAP 2007) (detailing Trustee's reasons for declining to bring an adversarial proceeding against the State). On February 2, 2006, without the bankruptcy court's permission, but within the two-year statute of limitations, PW Enterprises filed the complaint, which included avoidance claims under 11 U.S.C. §§ 547, 548.[4]

---

[2]Neither the Trustee nor Racing Services are parties to this appeal.

[3]PW Enterprises also argued that Racing Services made certain transfers to the State for which it was not responsible for under North Dakota law. Thus, PW Enterprises sought to void these transfers for the benefit of the estate.

[4]In pertinent part, Section 547 provides:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of

the petition, if such creditor at the time of such transfer was an insider; and

   (5) that enables such creditor to receive more than such creditor would receive if--
      (A) the case were a case under chapter 7 of this title;
      (B) the transfer had not been made; and
      (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In pertinent part, Section 548 provides:

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
   (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
   (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
      (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
      (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
      (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

Subsequently, in April 2006, PW Enterprises moved for leave to pursue these claims, i.e., sought derivative standing.

With the exception of the State, no party opposed PW Enterprises' April 2006 motion. The Trustee filed a formal response stating that he "does not resist PW [Enterprises'] motion . . . but requests that the [Bankruptcy] Court make clear, that the action pursued is an action of the estate and for the benefit of the estate from which no single creditor shall have a disproportionate gain." In response, PW Enterprises affirmed that it was "not seeking standing to pursue the [avoidance] Claims for its own benefit . . . [but] for the benefit of the estate" and "agree[d] to advance the fees and costs attendant to the prosecution of the Complaint."

On July 10, 2006, the bankruptcy court held a telephonic hearing on PW Enterprises' motion and denied it on August 7, 2006. The bankruptcy court concluded that PW Enterprises did not have standing to pursue an adversary action against the State because it failed to establish that the Trustee abused his discretion or acted unjustifiably by failing to pursue the avoidance claims. The bankruptcy court did not address PW Enterprises' contention that a creditor may proceed derivatively if the trustee consents to, or does not oppose, the action.

The Bankruptcy Appellate Panel ("BAP") affirmed the bankruptcy court's decision denying PW Enterprises' motion. The BAP declined to resolve the issue of whether derivative standing was appropriate when a trustee consents. Rather, the BAP concluded that the bankruptcy court properly denied PW Enterprises derivative

_____

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1).

standing because it did not first seek permission with the bankruptcy court to file its complaint.  See In re Racing Servs., Inc., 363 B.R. at 916-17.

On appeal, PW Enterprises argues that the bankruptcy court erred by holding that a creditor may proceed derivatively only when the trustee acts improperly or abuses his discretion.  While neither defending nor declaiming the bankruptcy court's rationale, the State argues that it properly denied PW Enterprises standing because its motion was untimely, i.e., PW Enterprises sought derivative standing only after filing its complaint.[5]

## II

We apply the same standard of review as the BAP.  We review the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo*.  See Blackwell v. Lurie (In re Popkin & Stern), 223 F.3d 764, 765 (8th Cir. 2000).  We review the bankruptcy court's order denying PW Enterprises standing, as a matter of law, *de novo*.  See, e.g., Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.), 177 F.3d 719, 721 (8th Cir. 1999), aff'd sub nom. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000).

## III
### A

We begin by resolving the uncertainty in this Circuit over the availability of derivative standing when a trustee is "unable or unwilling" to pursue avoidance claims

---

[5]The State suggests that in this case the denial was especially appropriate because PW Enterprises moved to proceed derivatively after the expiration of the statute of limitations.  The State, however, does not develop this argument.  Rather, the State's timing argument focuses primarily on the fact that PW Enterprises filed its motion to proceed derivatively after filing its complaint.

under the Bankruptcy Code.  As the BAP observed below, bankruptcy courts within the Eighth Circuit have expressed conflicting views on whether our decision in Nagle v. Lauer (In re Lauer), 98 F.3d 378 (8th Cir. 1996), formally endorsed the possibility of derivative standing in this context.  See In re Racing Servs., Inc., 363 B.R. at 915-16 (noting that some bankruptcy courts recognize the possibility of derivative standing under In re Lauer when a trustee is unwilling to pursue avoidance actions, whereas other bankruptcy courts outright reject derivative standing or seek further guidance from the Court of Appeals).  In In re Lauer, we affirmed the denial of standing to creditors who sought to void certain pre-bankruptcy transfers under 11 U.S.C. § 548 because they "alleged no facts to support an inference that the bankruptcy trustee was unable or unwilling to pursue claims on behalf of the estate." 98 F.3d at 388.  We stated that as a general rule "[a]bsent evidence that the trustee cannot be relied upon to assert [claims under §§ 547, 548], claims to avoid preferential transfers may not be brought by creditors."  Id.

We now make clear what In re Lauer implicitly recognized: derivative standing is available to a creditor to pursue avoidance actions when it shows that a Chapter 7 trustee (or debtor-in-possession in the case of Chapter 11) is "unable or unwilling" to do so.[6]  In so holding, we join those circuits that have addressed this issue and uniformly recognized the possibility of derivative standing in this context.  See Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166, 176 (2d Cir. 2005) (citing Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901 (2d Cir. 1985)); Official Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.), 330 F.3d 548, 553 (3d Cir. 2003) (*en banc*); Fogel v. Zell, 221 F.3d 955, 965 (7th Cir. 2000); Avalanche Mar., Ltd. v. Parekh (In re Parmetex, Inc.), 199 F.3d 1029, 1031 (9th Cir.

_____

[6]A Chapter 11 debtor-in-possession has similar powers and responsibilities as a Chapter 7 trustee.  See 11 U.S.C. § 1107 (debtors-in-possession expressly given the rights and powers of a trustee).  We see no reason to differentiate between these proceedings for the purpose of the derivative standing analysis.

1999); Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group, Inc.), 66 F.3d 1436, 1440-41 (6th Cir. 1995); La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 247-48 (5th Cir. 1988).[7]

---

[7]We agree with the Third Circuit that the Supreme Court's decision in Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000), does not foreclose derivative standing under the Bankruptcy Code. See In re Cybergenics Corp., 330 F.3d at 555-67; see also Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re Caldor Corp.), 303 F.3d 161, 166 n.2 (2d Cir. 2002) (post-Hartford Underwriters decision approving derivative standing); Fogel v. Zell, 221 F.3d 955, 965 (7th Cir. 2000) (same). Our basic agreement with the Third Circuit that derivative standing survives Hartford Underwriters should not be understood, however, as a wholesale endorsement of its analysis or subsidiary conclusions regarding various provisions of the Bankruptcy Code.

In Hartford Underwriters, debtor Hen House obtained workers' compensation insurance from petitioner Hartford Underwriters ("Hartford") (which was unaware of the bankruptcy proceedings) as part of its Chapter 11 reorganization strategy. Although Hen House failed to pay its premiums, Hartford continued to provide insurance. The Chapter 11 reorganization failed, however, and the bankruptcy court converted the case to a Chapter 7 liquidation. At this point, Hartford learned of Hen House's bankruptcy and sought recovery of the overdue premiums. The parties agreed that under 11 U.S.C. § 503(b) the unpaid premiums qualified as "administrative expenses" and therefore took priority over any unsecured claims, but not over secured claims, see 11 U.S.C. § 506. Because the estate lacked unencumbered funds to pay the premiums and virtually all of Hen House's assets were held by secured creditors, Hartford – as an administrative claimant – was not likely to recover anything unless its claim took priority over at least some of the secured claims. Hartford attempted to accomplish this by filing an application with the bankruptcy court under § 506(c), which provides an exception to the typical priority order.

Under § 506(c), "[t]he *trustee may* recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (emphasis added). Hartford argued it could properly invoke § 506(c) to recover the unpaid premiums, despite not being the trustee, because: (1) the provision does not restrict its enforceability to the trustee; (2) pre-Bankruptcy Code practice recognized administrative claimant standing; and (3) policy considerations favor

Even those bankruptcy courts that correctly read In re Lauer as permitting derivative standing, however, "disagree[d] as to what constitutes the trustee's inability or unwillingness to bring suit which justifies derivative standing." In re Racing Servs., Inc., 363 B.R. at 915. This discord is hardly surprising because In re Lauer did not detail what a creditor must actually show to establish inability or unwillingness on the part of the trustee. Taken to an extreme, the literal import of its "unable or unwilling" language suggests that a creditor could proceed derivatively by merely showing that the trustee is unable to pursue the creditor's claims because the trustee is 'too busy,' 'lacks funds,' or 'just doesn't want to.' We now make clear that In re Lauer demands more of a creditor who seeks derivative standing. If creditors could obtain derivative standing too readily, they "could usurp the central role that the trustee or debtor-in-possession plays as the representative of the estate." In re Baltimore Emergency Servs. II, Corp., 432 F.3d 557, 562 (4th Cir. 2005). And so, to

_____

granting standing to administrative claimants.

The Supreme Court unanimously rejected these arguments. The Court carefully noted, however, that its decision did not "address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)" because "it ha[d] no analogous application . . . since [Hartford] did not ask the trustee to pursue payment . . . and did not seek permission from the Bankruptcy Court to take such action." Hartford Underwriters, 530 U.S. at 13 n.5. The Court made clear that it had rejected only "the assert[ion] [of] an independent right to use § 506(c)." Id. Hartford Underwriters therefore does not control because it did not answer the question before us: whether the bankruptcy court may authorize a creditor to bring claims the Bankruptcy Code expressly reserves to the trustee (or debtor-in-possession).

Finally, we note that no court of appeals has expressly rejected the possibility of derivative standing when a trustee is unable or unwilling to pursue avoidance actions. But see Scott v. National Century Fin. Enters., Inc. (In re Baltimore Emergency Servs. II, Corp.), 432 F.3d 557, 560-61 (4th Cir. 2005) (expressing hostility toward the availability of derivative standing under the Bankruptcy Code); In re Cybergenics Corp., 330 F.3d at 580-87 (Fuentes, J., dissenting, joined by Alito, Sloviter, Smith, JJ.) (arguing that the analytical framework of Hartford Underwriters forecloses the availability of derivative standing.).

prevent derivative adversary proceedings from becoming the norm in bankruptcy, we agree with our sister circuits that the critical inquiry is whether the trustee (or debtor-in-possession) abused its discretion by *unjustifiably* refusing to pursue the creditor's proposed claims.  See Fogel, 221 F.3d at 966; In re Gibson Group, Inc., 66 F.3d at 1442; La. World Exposition, 858 F.2d at 247-48; In re STN Enters., 779 F.2d at 905.

We therefore hold, to establish derivative standing, a creditor must show:  (1) it petitioned the trustee to bring the claims and the trustee refused; (2) its claims are colorable; (3) it sought permission from the bankruptcy court to initiate an adversary proceeding; and (4) the trustee unjustifiably refused to pursue the claims.  We expect in most cases creditors will readily satisfy the first three elements without much difficulty – petitioning the trustee and bankruptcy court ought to be mere formalities. And a creditor's claims are colorable if they would survive a motion to dismiss.  The real challenge for the creditor will be to persuade the bankruptcy court that the trustee unjustifiably refuses to bring its claims.  To satisfy its burden, the creditor, at a minimum, must provide the bankruptcy court with *specific* reasons why it believes the trustee's refusal is unjustified.[8]  A creditor thus does not meet its burden with a naked assertion that 'the trustee's refusal is unjustified.'  If presented with nothing more than this, the bankruptcy court may properly deny a creditor's motion without explanation. The creditor, *not the bankruptcy court*, has the onus of establishing the trustee unjustifiably refuses to bring the creditor's claim.[9]

_____

[8]A creditor's request for derivative standing must be supported by competent evidence, for example, in the form of affidavits or through oral testimony at an evidentiary hearing.  See, e.g., In re STN Enters., 779 F.2d at 905.

[9]We emphasize that the burden of persuasion always remains with the creditor. And so, even if the trustee offers no reasons for his refusal to pursue the creditor's proposed claims, the bankruptcy court may nevertheless reject the creditor's request to proceed derivatively.  But see In re Gibson Group, Inc., 66 F.3d at 1446 ("A creditor has met its burden [by showing] . . . it has fulfilled the first three requirements and the trustee . . . declined to take action without stating a reason. The burden then

-10-

We hesitate to speculate, however, on the type of factual showing that would demonstrate a trustee unjustifiably refuses to pursue a creditor's claims. Our inability to do so stems from the fact that the circumstances which make a trustee's decision unjustified in one bankruptcy may not necessarily support the same conclusion in another. But we also believe the universe of circumstances in which the trustee's refusal to bring a creditor's claims is unjustified to be somewhat limited. At one end of the spectrum, a trustee almost certainly abuses his discretion by refusing to bring a creditor's claim that, if successful, would *clearly* benefit the estate. At the other end, a trustee certainly does not abuse his discretion by refusing to bring a claim that would yield insignificant benefits to the estate. A more difficult situation, however, is when the creditor establishes that its claims, if successful, would offer more than marginal benefits to the estate but not necessarily a windfall. See also In re STN Enters., 779 F.2d at 906 (suggesting that a trustee's refusal to pursue claims might be unjustified when a creditor (or creditors' committee) is willing to shoulder the costs of litigation and the fee arrangement imposes no net burden on the bankruptcy estate); William B. Tanner Co. v. United States (In re Automated Business Sys., Inc.), 642 F.2d 200, 201-02 (6th Cir. 1981) (holding that a creditor had standing to file an avoidance action where trustee refused to bring suit due to lack of funds). In short, we trust that bankruptcy judges will, in the first instance, refine the contours of when derivative standing is appropriate.

At bottom, the determination of whether the trustee unjustifiably refuses to bring a creditor's proposed claims will require bankruptcy courts to perform a cost-benefit analysis. See In re STN Enters., 779 F.2d at 905. While by no means exhaustive, among the factors the court should consider in conducting this analysis are: (1) "[the] probabilities of legal success and financial recovery in event of success"; (2) the creditor's proposed fee arrangement; and (3) "the anticipated delay

shifts to the [trustee] to establish, by a preponderance of the evidence, that [his] reason for not acting is justified.").

and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce." Id. at 905-906. We do not suggest, however, that the bankruptcy court "undertake a mini-trial" in evaluating a creditor's request for derivative standing. Id. at 905 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) (no mini-trial in class actions)). But the bankruptcy court must support its decision to grant or deny standing with a written or oral explanation that reflects it conducted the appropriate cost-benefit analysis.

Ultimately, the bankruptcy court's decision whether to grant a creditor derivative standing will be reviewed for an abuse of discretion. This standard of review reflects the understanding that the decision of whether to permit a creditor to assert claims the Bankruptcy Code expressly reserves for the trustee (or debtor-in-possession) is a quintessential exercise of the bankruptcy court's equitable powers. See, e.g., In re Cybergenics Corp., 330 F.3d at 567-69. And like other equitable determinations, it warrants considerable deference from a reviewing court. See, e.g., C.T. Dev. Corp. v. Barnes (In re Oxford Dev., Ltd.), 67 F.3d 683, 685 (8th Cir. 1995) ("[W]e review the bankruptcy court's equitable determinations for abuse of discretion.") (citing Foy v. Klapmeier, 992 F.2d 774, 779 (8th Cir. 1993)). Such deference ensures that bankruptcy courts will neither feel constrained from flexibly exercising their equitable powers to grant or deny creditors derivative standing nor fear unenlightened second-guessing by the court of appeals.

**B**

PW Enterprises did not argue that the Trustee unjustifiably refused to pursue its claims. Rather, PW Enterprises sought permission to proceed derivatively under circumstances in which the Trustee did not oppose its complaint (or consented to its filing). This is an issue of first impression in this Circuit.

In In re Commodore Int'l Ltd., the Second Circuit held that a creditors' committee may proceed derivatively when the debtor-in-possession (or trustee) consents to its suit. See 262 F.3d 96, 99-100 (2d Cir. 2001). In reaching this conclusion, the Second Circuit found persuasive the following reasoning from a Ninth Circuit Bankruptcy Appellate Panel decision:

> The [trustee or] debtor in possession has an obligation to pursue all actions that are in the best interests of creditors and the estate. An unsecured [creditor or] creditors' committee has a close identity of interests with the [trustee or] debtor in possession in this regard. Allowing the [trustee or] debtor in possession to coordinate litigation responsibilities with an unsecured [creditor or] creditors' committee can be an effective method for the [trustee or] debtor in possession to manage the estate and fulfill its duties . . . . Rather than a flat prohibition, impartial judicial balancing of the benefits of a committee's representation better serves the bankruptcy estate.

Id. at 99 (quoting Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.), 207 B.R. 899, 904 (9th Cir. BAP 1997)).

Like the Second Circuit, we are persuaded by the reasoning of In re Spaulding Composites, and hold that a creditor may proceed derivatively when the trustee (or debtor-in-possession) consents (or does not formally oppose) the creditor's suit.[10] See

---

[10]Although In re Spaulding Composites was a Chapter 11 case, we find that distinction to be inconsequential. As noted above, a Chapter 7 trustee has similar duties and powers as a Chapter 11 debtor-in-possession. Equally inconsequential is the fact that a creditors' committee, rather than a creditor, sought derivative standing in In re Commodore Int'l Ltd. The Second Circuit has held that creditors and creditors' committees may alike obtain derivative standing when the trustee consents. See Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 71 n.7 (2d Cir. 2002) ("Although STN and Commodore both involved creditors' committees, the holdings of those cases also apply to individual creditors such as BNP. Numerous

also In re Parmetex, Inc., 199 F.3d at 1031 ("Although Defendants are correct that a trustee must generally file an avoidance action under Chapter 7, we hold that under these particular circumstances – where the trustee *stipulated* that the Creditors could sue on his behalf and the bankruptcy court approved that stipulation – the Creditors had standing to bring the suit.") (emphasis added).

We also adopt the Second Circuit's standard for establishing derivative standing when the trustee (or debtor-in-possession) consents:

> A creditor[] . . . may acquire standing to pursue the debtor's claims if (1) the [creditor] has the consent of the debtor in possession or trustee, and (2) the [bankruptcy] court finds that suit by the [creditor] is (a) in the *best interest* of the bankruptcy estate, and (b) *is necessary and beneficial* to the fair and efficient resolution of the bankruptcy proceedings.

In re Commodore Int'l Ltd., 262 F.3d at 100 (emphasis added, internal quotation marks omitted).

The Second Circuit described its approach as "a reasoned and practicable division of labor between the creditor[] and the debtor in possession or trustee, while also providing bankruptcy courts with significant authority both to manage the litigation and to check any potential for abuse by the parties." Id. We agree with this assessment. We emphasize, however, that compared to situations in which a creditor seeks derivative standing because the trustee acts unjustifiably, a creditor will typically face a comparatively greater burden to establish derivative standing when the trustee consents. That is not to say the creditor's evidentiary burden differs between the contexts. Rather, bankruptcy courts must not lose sight of the fact that a creditor *must* show that its proposed "consensual" derivative action is *both* "*necessary and beneficial* to the fair and efficient resolution of [the bankruptcy

---

courts have granted individual creditors standing to sue in the stead of a trustee or debtor-in-possession.")(citations omitted).

proceedings].” Id. (emphasis added). In other words, not every “beneficial” action is “necessary” for a given proceeding.[11]

Accordingly, bankruptcy courts should not passively view the trustee's consent as a proxy that a proposed derivative action is “necessary and beneficial.” If they did, bankruptcy courts would be effectively ceding their gatekeeper function to the trustee. We therefore make plain that a trustee's consent is a necessary, but not sufficient condition for granting a creditor derivative standing in this context. Regardless of whether a creditor seeks derivative standing because the trustee “unjustifiably” refuses to pursue its claims or consents to the creditor's complaint, the bankruptcy court has the same obligation – to carefully scrutinize the request and satisfy itself that derivative standing is proper under the circumstances.[12]

---

[11]Because the trustee is generally in the best position to evaluate whether a proposed action is necessary for a fair resolution of the bankruptcy proceedings, we expect them to withhold their consent (or oppose the action) when a proposed action is truly unnecessary (e.g., bordering on frivolous). Indeed, we would be surprised if trustees were routinely not pursuing all necessary actions because a failure to do so might possibly constitute a breach of their fiduciary duties.

[12]We noted above that bankruptcy courts should employ a cost-benefit analysis to determine whether derivative standing is appropriate under circumstances in which the trustee “unjustifiably” refuses to bring the creditor's claims. Bankruptcy courts should perform a similar analysis when confronted with a request for “consensual” derivative standing. Lest a bankruptcy court be tempted by form over substance, however, we note that neither the timing nor form of a trustee's (or debtor-in-possession's) consent should affect its determination of whether a creditor (creditors' committee) has in fact obtained the necessary consent. The only pertinent consideration with respect to consent is whether the trustee's representations can be fairly understood as either affirmatively consenting to or affirmatively not opposing a proposed derivative action. That the trustee's “consent” pre-dates or post-dates a creditor's motion for “consensual” derivative standing is irrelevant.

-15-

# C

Finally, we address the BAP's alternative basis for denying PW Enterprises standing. The BAP concluded that the bankruptcy court properly denied PW Enterprises standing because it did not first seek permission from the bankruptcy court to file its complaint. In essence, the BAP held that it *would have* been a proper exercise of the bankruptcy court's discretion to deny PW Enterprises standing because it filed its motion to proceed derivatively *after* its proposed complaint and was therefore untimely. We hold this was error.

First, the bankruptcy court's decision denying PW Enterprises derivative standing did not rest on the timing of its motion. Second, and more importantly, we reject the BAP's rule that "[a] creditor simply cannot file an avoidance action on the eve of the expiration of the statute of limitations and two and a half months later ask the court for retroactive permission to file the suit." In re Racing Servs., Inc., 363 B.R. at 916-17. Although not entirely clear, the BAP appears to have adopted a *per se* rule barring a creditor (or creditors' committee) from filing an adversary complaint unless it *first* obtains permission from the bankruptcy court. The BAP reasoned that such a rule would serve an important goal underlying the Bankruptcy Code: "swift and efficient administration of [the] bankruptcy estate." Id. at 916.

We find this justification unpersuasive. In most cases, regardless of whether a creditor seeks permission before or after filing its complaint, the bankruptcy court will expend similar resources when considering the creditor's request to proceed derivatively. The BAP nevertheless believed that "[r]equiring court approval prior to allowing a creditor to *file* a derivative suit furthers the goal of efficiency by weeding out unnecessary suits before they are filed." Id. (emphasis added). Not only is this observation far from self-evident, but it confuses the effect of filing a suit with the effect of its prosecution – only the latter threatens the efficient administration of the bankruptcy estate. Because a creditor may not prosecute a derivative suit *without* the

-16-

bankruptcy court's permission, the filing of an adversary complaint in itself does not affect the estate's administration. In other words, the timing of the creditor's motion is in most cases of little consequence.

The BAP's proposed rule is also inconsistent with the practice of numerous federal courts granting creditors retroactive permission (i.e., *nunc pro tunc* relief) to file a derivative adversary complaint. See, e.g., In re Spaulding Composites Co., 207 B.R. at 904-05; Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.), 326 B.R. 532, 545-546 (W.D. Pa. 2005) (citing nearly a dozen cases in which courts have permitted retroactive grants of derivative standing); Catwil Corp. v. Derf II (In re Catwil Corp.), 175 B.R. 362, 365-66 (Bankr. E.D. Cal. 1994) (explaining that bankruptcy courts need not find "extraordinary circumstances" before granting derivative standing retroactively). While we agree "the better practice is for the [creditor] to secure approval before filing [its] complaint, we will not foreclose the ability of a court to make its approval of the [complaint] retroactive to the time of the filing." In re Spaulding Composites Co., 207 B.R. at 905. We see no reason to demand formalistic adherence to a rule that could result in "needless dismissals and refilings." Id. And as one bankruptcy court recognized, equity may demand granting retroactive derivative standing because of extenuating circumstances. In re Catwil Corp., 175 B.R. at 365 (observing that filing an adversary complaint before seeking court approval because the statute of limitations is about to run may justify retroactive authorization).[13]

_____

[13]The BAP's holding relied largely on the Fourth Circuit's rejection "that it is possible to grant derivative standing retroactively in the absence of up-front approval by the bankruptcy court." In re Baltimore Emergency Servs. II, Corp., 432 F.3d at 563 (citing In re Catwil Corp., 175 B.R. at 365). We do not understand how In re Catwil Corp. supports the Fourth Circuit's seemingly broad rule rejecting retroactive grants of derivative standing. In In re Catwil Corp., the bankruptcy court not only unequivocally approved of the practice but "approve[d] the [creditors'] Committee's application for [retroactive] authorization to prosecute" its complaint. 175 B.R. at 365-66.

Our rejection of a *per se* rule forbidding retroactive grants of derivative standing should not be understood as limiting the bankruptcy courts' authority to deny such requests in the appropriate circumstances. But bankruptcy courts should not, *as a matter of course*, either reject or grant motions for retroactive authorization. Rather, they must evaluate each request independently. We caution bankruptcy courts, however, from exclusively relying on the fact that a creditor filed its motion after its complaint as a basis for denying meritorious derivative actions.[14]

**IV**

We conclude that a creditor (or creditor's committee) may obtain derivative standing to pursue avoidance actions under circumstances in which the trustee (or debtor-in-possession) either unjustifiably refuses to bring the creditor's proposed claims or consents to the creditor pursuing such claims in his stead. We also hold that the bankruptcy courts may retroactively grant a creditor derivative standing. We emphasize, however, that under no circumstances may a creditor *prosecute* its derivative complaint without the bankruptcy court's permission.

In this case, the bankruptcy court, in the first instance, will have to decide whether PW Enterprises should be granted retroactive standing to proceed derivatively. In making this determination, the bankruptcy court should apply the analysis discussed in Part IIIB of this opinion. Accordingly, we reverse and remand for further proceedings.

_____

_____

[14]Furthermore, bankruptcy courts should not deny a motion for retroactive standing simply because it was filed after the statute of limitations has run. So long as the creditor (or creditors' committee) files its proposed derivative complaint within the applicable statute of limitations period, the bankruptcy court should evaluate both whether a retroactive grant of standing is proper and the merits of the proposed derivative action. In such cases, however, the bankruptcy court should be wary of denying retroactive standing when the proposed derivative complaint has merit.