# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 14-6007

_____

In re: Cindy Foster

*Debtor*

------------------------------

John A. Larson, III

*Plaintiff - Appellant*

v.

Cindy Foster; Bruce L. Stephens

*Defendants - Appellees*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: July 17, 2014
Filed: September 15, 2014

_____

Before KRESSEL, SALADINO and SHODEEN, Bankruptcy Judges.

_____

SHODEEN, Bankruptcy Judge

John A. Larson, III, appeals the November 1, 2013 orders entered by the Bankruptcy Court[1] granting a Motion to Dismiss his complaint and denying his Motion for Retroactive Approval to Prosecute Derivative Action Complaint. For the reasons that follow, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Cindy M. Foster ("Debtor") was an agent for Allstate Insurance Company and a number of associated entities. According to a purchase agreement dated April 26, 2010, John A. Larson, III acquired Debtor's insurance business and a covenant not to compete for $425,000 to be paid over approximately two years in equal monthly installments. In August, 2011, Larson informed the Debtor that he believed she had violated the non-compete covenant. Larson paid only $245,000 of the total sale price.

In a separate transaction, Bruce L. Stephens loaned money to the Debtor. He obtained a judgment against her on October 21, 2011 in the amount of $174,547.42 for breach of the promissory note. On January 24, 2012, the Debtor executed a Partial Assignment to Stephens. The terms of the Partial Assignment required the Debtor to perform her obligations under the sale contract with Larson and represented that there was no breach under the sale contract. It permitted Stephens to enforce the Debtor's remedies to collect the outstanding balance owing to her from Larson for the sale of her insurance business. The following month, based upon the Partial Assignment, Stephens filed suit against Larson to enforce payment of the outstanding balance owing to the Debtor to collect on his judgment. Larson filed a third party complaint alleging fraud, intentional misrepresentation and breach of contract for which he sought damages.

---

[1] The Honorable Kathy A. Surratt-States, Chief Judge, United States Bankruptcy Court for the Eastern District of Missouri.

The Debtor filed bankruptcy on September 6, 2012. Charles Riske was appointed chapter 7 trustee ("Trustee"). Debtor's listing of assets on Schedule B did not include any reference to any amounts owing to her from Larson. Schedule F filed by the Debtor identified the obligation owing to Stephens. The Debtor's Statement of Financial Affairs did not disclose the Partial Assignment to Stephens nor did it reflect any payments received from Larson within the two years prior to her bankruptcy filing. Determining that there were no assets available to pay creditor claims, the Trustee filed a Report of No Distribution on November 19, 2012. This report was withdrawn on December 10, 2012. Both the Trustee and Larson filed requests to extend the December 12, 2012 deadline to object to the Debtor's discharge which were granted by the Court.[2] On December 10, 2012 Larson also filed an adversary proceeding naming the Debtor and Stephens as defendants. The complaint alleged that the January 2012 Partial Assignment between the two defendants constituted a fraudulent transfer under 11 U.S.C. section 548. The complaint also stated that Larson has derivative standing to pursue the fraudulent transfer because: he was not listed as a creditor; he had only recently learned of the Debtor's bankruptcy filing and although the Trustee was advised of the claim, he stated it would require further investigation which Larson asserted would not occur "before the scheduled date that the bankruptcy case would be closed."

Answers were filed, discovery was conducted and trial was scheduled for August 27, 2013. On August 18, 2013 Larson requested a continuance of the trial date for 90 days. A flurry of filings by all parties then ensued. Of importance to this case are: Debtor's Motion to Dismiss the complaint due to Larson's lack of standing and Larson's Motion for Retroactive Approval to Prosecute Derivative Action Complaint and objections thereto.

---

[2] No complaints objecting to discharge were filed within the extended time frame and the Debtor's discharge was entered on February 12, 2012.

After simultaneous hearings on the parties' motions, the Bankruptcy Court denied Larson's Motion for derivative standing. Because he lacked standing to pursue the adversary proceeding, the Bankruptcy Court dismissed the complaint. Larson appeals these orders and raises essentially three issues on appeal: (1) the Bankruptcy Court erred in finding that the Trustee was justified in his decision not to pursue the fraudulent transfer claim; (2) the Trustee consented to Larson's derivative standing; and (3) equitable estoppel prevents the denial of Larson's derivative standing.[3]

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. First Nat'l Bank v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997) (quoting Miller v. Farmers Home Admin. (In re Miller), 16 F.3d 240, 242 (8th Cir. 1994). Motions to dismiss and for derivative standing are subject to de novo review. GAF Holdings, LLC v. Rinaldi, et al. (In re Farmland Indus., Inc.), 408 B.R. 497, 503 (B.A.P. 8th Cir. 2008); PW Enters., Inc. v. North Dakota Racing Commission, (In re Racing Servs., Inc.), 540 F.3d 892, 898 (8th Cir. 2008). Whether to grant derivative standing involves an exercise of a bankruptcy court's equitable powers. Such a determination is given deference by a reviewing court and will only be set aside for an abuse of discretion. In re Racing Servs., Inc., 540 F.2d at 901.

## DISCUSSION

1.     Derivative Standing

The Bankruptcy Code provides that a trustee may avoid, as fraudulent, transfers of property that occur within certain time frames and when specific

---

[3] A transcript of the Bankruptcy Court's hearings was not included as part of the record on appeal. It is with this limitation that these issues are addressed.

circumstances are met. <u>See</u> 11 U.S.C. § 548(a)(1) (2014). As a general proposition it is well settled that such transfers may only be avoided by a trustee. <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.</u>, 530 U.S. 1, 6 (2000). Derivative standing is clearly an exception to a trustee's exclusive authority to bring avoidance actions.

> [T]he power to grant derivative standing to a creditor to pursue estate causes of action . . . should not be exercised in a relaxed manner by bankruptcy courts. Otherwise, a creditor could "hijack" a Chapter 7 bankruptcy case in a manner Congress did not envision. If a creditor does not agree with a Chapter 7 trustee's exercise of its fiduciary duties, it can file a motion to compel the trustee to act or file a motion to have the trustee removed. But, it would seem to be, generally, an unwise idea to allow a creditor to usurp the trustee's role as a representative of the estate – including being a gatekeeper for what actions make sense and the evaluator of the potential benefits of litigation.

<u>Reed v. Cooper</u> (<u>In re Cooper</u>), 405 B.R. 801, 807 (Bankr. N.D. Texas 2009) (citing <u>Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery</u>, 330 F.3d 548, 561 (3rd Cir. 2003) (en banc); <u>Hartford Underwriters Ins. Co.</u>, 530 U.S. at 8.).

The Eighth Circuit permits derivative standing to bring an avoidance action when it can be shown that the trustee is unable or unwilling to do so. <u>In re Racing Servs., Inc.</u>, 540 F.3d at 898 (citations omitted). The party seeking such derivative standing bears the burden of proof on four separate factors: (1) the trustee was petitioned to bring the claim and refused; (2) the claim is colorable; (3) permission was sought from the bankruptcy court to initiate the adversary proceeding and (4) the trustee unjustifiably refused to pursue the claim. <u>In re Racing Servs., Inc.</u>, 540 F.3d at 900. Establishing these factors is critical to preventing "creditors from

pursuing derivative claims that are quite weak." Hyundai Translead, Inc. ex rel. Trailer Source, Inc. v. Jackson Truck & Trailer Repair, Inc., 419 B.R. 749, 754 (M.D. Tenn. 2009) (citations and internal quotations omitted).

The second and third factors are not central to the outcome of this appeal and are essentially undisputed based upon the record and the parties' briefs. A creditor's claim is colorable if it would survive a motion to dismiss. "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citations omitted). The timing and purpose of the Partial Assignment raise a colorable claim under the statute. The third factor requires a showing that permission was sought to pursue the fraudulent transfer claim. Larson did not seek permission from either the Trustee, or the court, prior to filing the adversary proceeding. A retroactive request for derivative standing, however, is permissible. In re Racing Servs., Inc., 540 F.3d at 904.

Two factors remain to establish derivative standing. One is that the trustee refused to bring an avoidance action. On this point, Larson contends that he informed the Trustee of the fraudulent transfer involving the Partial Assignment and asked if the Trustee would be pursuing the action on behalf of the estate. His Affidavit in Opposition to the Debtor's Motion to Dismiss states that: "[t]o avoid the entry of the Discharge, which would have terminated the right to pursue the fraudulent conveyance, I filed the instant Complaint on behalf of the Creditor as a derivative action, in the absence of the action of the Trustee to do so." Larson appears to believe that the entry of discharge does not automatically result in the closing of the case or preclude the Trustee from pursuing the action to avoid the fraudulent transfer. It does not. In fact, a trustee has the later of two years from the date a bankruptcy petition is filed, or the time the case is closed, to file such an action. See 11 U.S.C. § 546(a)(1) (2014). There is no evidence that the Trustee

refused to undertake avoidance of the transfer, rather, he merely responded that he would need more information.

Acknowledging that derivative standing is the exception rather than the rule, the final factor requires specific reasons, supported by competent evidence, that show that a trustee has unjustifiably refused to pursue the avoidance action. See In re Racing Servs., Inc., 540 F.3d at 900. Analyzing a trustee's refusal to bring suit focuses on whether a clear benefit to the estate can be identified or whether only insignificant benefits would be realized. Id. In making this comparison a court may consider the probability of success in litigation, potential financial recovery, expenses which could be incurred and the delay in case administration. Id. at 901. In its ruling, the Bankruptcy Court identified the complexity of the matters, including a three step process before any recovery could even be potentially available to the bankruptcy estate; the risks associated with litigation; and the expense of litigation in finding that the Trustee was justified in his refusal to pursue avoidance of the Partial Assignment. These findings conform to the cost benefit analysis mandated by the law in this Circuit.

Larson correctly identifies a benefit to the estate in his willingness to fund the fraudulent transfer litigation. However, this represents only one of the items to be considered in determining whether derivative standing is appropriate and on its own does not represent a clear benefit to the estate. Larson also argues that he has filed a proof of claim in the bankruptcy proceeding which on its face indicates that he is the Debtor's largest creditor.[4] He further states that based upon the size of his claim, and after his successful prosecution of the avoidance action, he would be willing to settle with the Trustee for an amount that would result in all creditors being paid in full. Based upon this explanation he concludes that the Trustee must be declared unjustified in refusing to bring the adversary proceeding because of

---

[4] Proof of Claim No. 1 was filed by Larson in the amount of $465,000.00. The claim description states that the claim arises from breach of contract and fraud and attaches the purchase agreement for Debtor's insurance business.

this clear benefit to be bestowed upon the estate. Realization of Larson's scenario hinges on a number of speculative circumstances. This somewhat convoluted theory overlooks the fact that he holds only an unliquidated, disputed claim which has not been finally allowed and is the subject of various issues that were raised in his third party complaint in state court (which have not been litigated) and remain contested in the pending complaint. It is apparent that Larson, not the bankruptcy estate, stands to obtain the most substantial benefit from an action to avoid the Partial Assignment. The adversary proceeding, at least for the time being, allows Larson to avoid defending the litigation initiated against him by Stephens, enables him to defer payment of the outstanding obligation for the purchase of the insurance business, and provides a forum for him to press his position that the Debtor committed fraud and breached the covenant not to compete. Allowing derivative standing under such circumstances is inappropriate. In re McGuirk, 414 B.R. 878, 880 (Bankr. N.D. Ga. 2009).

2.    Consent

In In re Racing Services, Inc., the Eighth Circuit adopted the Second Circuit's position "that a creditor may proceed derivatively when the trustee (or debtor-in-possession) *consents (or does not formally oppose)* the creditor's suit." 540 F.3d at 902 (citations omitted) (emphasis added). The term consent implies an affirmative action. It is clear in this case that Larson did not obtain the consent of the Trustee, either formally or informally, before filing the avoidance action. The Trustee's objection to the Motion for retroactive approval of derivative standing is further proof that he had not consented to Larson's derivative standing.

Larson also contends that the Trustee did not formally oppose his derivative standing because he had knowledge of the fraudulent transfer and entered an appearance in the pending adversary to monitor the litigation. This argument attempts to impermissibly shift the burden of seeking derivative standing from Larson to the Trustee. Larson's argument appears to impose an affirmative duty

8

for a trustee to take action to formally oppose a suit even where the trustee is not named as party to the suit and for which no pending motion to obtain permission for derivative standing has been filed. To apply the interpretation urged by Larson would expand the definition of consent and the phrase "does not formally oppose the creditor's suit" beyond what is contemplated by current authority. See In re Racing Servs., Inc., 540 F.3d 892; In re Commodore Int'l Ltd., 262 F.3d 96; In re Spaulding Composites, Co., 207 B.R. 899; Baranek v. Baranek, No. 12-CV-5090 (PKC), 2013 WL 4899862, at *3-4 (E.D.N.Y. Sept. 11, 2013).

Even if consent or no formal opposition exists, a bankruptcy court must also find that the suit is necessary, beneficial and in the best interests of the estate. Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 100 (2nd Cir. 2001). In reaching a conclusion on this inquiry courts must be mindful that "not every beneficial action is necessary" in a given case. In re Racing Servs., Inc., 540 F.3d at 902 (internal quotations and citations omitted). Larson's arguments fail to identify an abuse of discretion in the Bankruptcy Court's findings related to this issue. The Bankruptcy Court stated that granting Larson derivative standing would not be in the best interests of the estate and was "certainly not necessary and beneficial to the fair and efficient resolution of Debtor's bankruptcy proceeding."

3.      Equitable Estoppel

Larson complains that the Debtor did not raise the lack of standing issue until the date originally scheduled for trial. The filed documents indicate that this statement is not exactly correct. On February 14, 2012 the Debtor filed an answer to the adversary proceeding in which she asserted that Larson lacked standing to bring the avoidance action. Although the issue of standing had been raised, Larson took no action to establish his derivative standing for seven months and then only after the Debtor filed her Motion to Dismiss. In any case, when Larson filed his motion, the trustee formally opposed the derivative action based upon a number of

justifications. Similar to the positions raised in his other arguments, Larson states that because the Debtor's Motion to Dismiss and standing issues were not raised until the eve of trial, they are too late and that equitable estoppel should preclude any objection to his standing. Larson appears to propose that equitable estoppel should somehow cure his failure to appropriately seek derivative standing, and therefore, granting the Debtor's Motion to Dismiss was improper. This position simply serves as yet another attempt to shift the burden to establish derivative standing away from Larson. Based upon the law, the filed documents and the timing of events in this case, these arguments are without merit.

Standing is a component of subject matter jurisdiction that may be challenged at any time during the proceeding. Warth v. Seldin, 422 U.S. 490, 498-99 (1975). If a plaintiff does not have standing to bring a claim, the court does not have subject matter jurisdiction over the claim. See Bhandari v. Cadence Design Sys., 486 F. Supp. 2d. 747, 750 (E.D. Tex. 2007). Because standing is an issue of a court's subject matter jurisdiction, the theory of equitable estoppel does not apply. 28 Am. Jur. 2d Estoppel and Waiver § 31 (2014). Derivative standing was properly denied in this case, therefore, the Bankruptcy Court lacked subject matter jurisdiction which required dismissal of the complaint.

Based upon the record and applicable legal standards, the Bankruptcy Court did not abuse its discretion in denying derivative standing. It follows that dismissal of the complaint was not only appropriate, but required. Accordingly, the Bankruptcy Court's Orders are affirmed.

_____

10