
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>RS AIR, LLC<br><div align="center">Debtor.</div> | BAP No.  NC-21-1102-GTB<br><br>Bk. No. 20-51604 |
| NETJETS SALES, INC.; NETJETS<br>AVIATION, INC.; NETJETS SERVICES,<br>INC.,<br><div align="center">Appellants,</div><br>v.<br>RS AIR, LLC; STEPHEN G. PERLMAN;<br>REARDEN LLC,<br><div align="center">Appellees.</div> | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: GAN, TAYLOR, and BRAND, Bankruptcy Judges.

## INTRODUCTION

NetJets Sales, Inc, NetJets Aviation, Inc, and NetJets Services Inc.

(collectively "NetJets") appeal the bankruptcy court's order denying its

motion for derivative standing to pursue claims on behalf of the estate of

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

chapter 11[1] debtor, RS Air, LLC ("Debtor") and against Debtor's principal, Steven G. Perlman ("Perlman"), his trust, and Rearden LLC ("Rearden" and collectively "Appellees"). NetJets sought standing to pierce Debtor's corporate veil to make Appellees liable for the underlying contractual debt owed to NetJets.

The bankruptcy court's analysis turned solely on whether NetJets could assert a colorable claim on behalf of the estate. Although the bankruptcy court based its decision on the sufficiency of the facts alleged by NetJets, we question whether the claim which NetJets sought to assert was really a claim belonging to the estate or an equitable remedy belonging to the creditor.

But this question was not presented to the bankruptcy court, and the record was not developed on this issue. Consequently, we do not decide whether the purported action is property of the estate or whether the estate has exclusive standing to pursue such action.[2]

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] It is undisputed that prior to Debtor's bankruptcy filing, NetJets had standing to file an action to pierce Debtor's corporate veil. Debtor argues that under Delaware law, it also had standing to pierce its own corporate veil and, after filing the petition, its standing became exclusive.

We note that even if the estate has exclusive standing to pierce its corporate veil, Debtor's plan does not administer or otherwise dispose of the purported veil-piercing action, and to the extent Debtor has exclusive standing, it will terminate upon the confirmation order becoming effective. *See Koch Refin. v. Farmers Union Cent. Exch., Inc.,*

Because the bankruptcy court erred in its application of the colorability standard, we VACATE and REMAND.[3]

## FACTS[4]

In November 2020, Debtor filed a chapter 11 petition. NetJets is Debtor's largest, non-insider creditor and holds approximately 98% of the total non-insider debt. Debtor filed both initial and amended chapter 11 plans. Neither provided for full payment of NetJets' claim.

NetJets responded with a motion for standing to commence and prosecute an action on behalf of the estate to pierce Debtor's corporate veil (the "Standing Motion"). It argued that the bankruptcy case was filed as a litigation tactic to avoid judgment against Debtor in a state court proceeding and to shield the other Appellees from potential liability. NetJets urged the bankruptcy court to dismiss the case or alternatively allow NetJets to pursue claims against Appellees.

---

831 F.2d 1339, 1346 n.9 (7th Cir. 1987); *Stein v. United Artists Corp.*, 691 F.2d 885, 890 (9th Cir. 1982); *CBS, Inc v. Folks (In re Folks)*, 211 B.R. 378, 388 (9th Cir. BAP 1997), *abrogated on other grounds by Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010).

[3] Because we concurrently affirm the confirmation order by separate order, further proceedings will be necessary only if the confirmation order is vacated by a subsequent appellate decision. The effectiveness of the confirmation order is stayed by our order in BAP No. NC-21-1227-BGT which will expire fourteen days after entry of our written disposition in that case. Upon the confirmation order becoming effective, any right of the estate to assert a veil-piercing action will terminate.

[4] We provide a complete recitation of facts in our disposition of the related appeal from the order confirming Debtor's chapter 11 plan. *See* BAP No. NC-21-1227-BGT.

NetJets attached a draft complaint which it argued set forth colorable claims that had significant potential value to the estate. NetJets alleged that Debtor and Appellees shared resources, and, although Debtor provided air travel to Appellees and others, it had no independent income. NetJets claimed Perlman completely controlled Debtor's finances by transferring funds from his personal account to satisfy Debtor's obligations and manipulated Debtor's account to prevent NetJets and other creditors from recovering their claims. NetJets averred that it made a demand on the Debtor to pursue the veil-piercing claims, but Debtor failed to respond, and its inaction was unjustified.

The draft complaint included allegations that Perlman created Debtor solely to obtain the benefits of Debtor's fractional jet ownership for himself, Rearden, and other affiliated entities, and Debtor never observed corporate formalities or had its own employees. NetJets claimed that Perlman was the sole source of funding for Debtor, and he ensured that, after paying its bills, Debtor maintained less than $10,000 in its account, for the purpose of thwarting collection efforts if Perlman chose not to pay a particular debt. Debtor further asserted that Perlman manipulated and misused Debtor's corporate form for his own strategic purposes by ceasing to fund Debtor's obligations to NetJets or pay its litigation costs and by instead placing Debtor into bankruptcy.

The bankruptcy court denied the Standing Motion after applying the four-part test set forth in *Canadian Pacific Forest Products, Ltd. v. J.D. Irving,*

4

*Ltd. (In re Gibson Group, Inc)*, 66 F.3d 1436 (6th Cir. 1995) and cited in *Morabito v. JH, Inc. (In re Consolidated Nevada Corp.)*, BAP Nos. NV-17-1210-FLTi, NV-17-1211-FLTi, 2017 WL 6553394 (9th Cir. BAP 2017). Under that test, a bankruptcy court may grant a creditor derivative standing where: (1) the creditor made a demand upon the debtor to take action; (2) the demand was declined; (3) creditor alleges a colorable claim that would benefit the estate if successful, based on a cost-benefit analysis performed by the court; and (4) the inaction by the debtor is unjustified in light of the debtor's duties in a chapter 11 case. *In re Gibson Group*, 66 F.3d at 1446.

The court's decision turned solely on whether the claims asserted by NetJets were colorable. In evaluating colorability, the bankruptcy court employed the Civil Rule 12(b)(6) standard and determined that NetJets failed to allege sufficient facts to state a claim for relief. In April 2021, the bankruptcy court entered its order denying the Standing Motion and NetJets timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion by denying the Standing Motion?

## STANDARD OF REVIEW

We review for abuse of discretion the bankruptcy court's decision whether to grant derivative standing to pursue claims of the estate. *In re Consol. Nev. Corp.*, 2017 WL 6553394 at *4; *PW Racing Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 901 (8th Cir. 2008). A bankruptcy court abuses its discretion if it applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A. Colorable Claims Under Delaware Law

The parties agree that the bankruptcy court properly used the *Gibson Group* test to determine whether to grant NetJets derivative standing, and we have previously held that test to be appropriate. *See In re Consol. Nev. Corp.*, 2017 WL 6553394 at *7. The only issue on appeal is whether the bankruptcy court erred in determining that NetJets did not assert a colorable claim that would benefit the estate.

We held in *Consolidated Nevada Corporation* that the test for "colorability" is analogous to a Civil Rule 12(b)(6) inquiry. 2017 WL 6553394 at *7 n.5. In determining colorability, the court should evaluate the sufficiency of the claims without speculating whether the claims would be successful. *Id.* at *7. The parties also agree that because Debtor is a Delaware LLC, Delaware law governs.

6

To state a "veil-piercing claim" under Delaware law, "the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003). A court may pierce an entity's corporate veil if the plaintiff shows: (1) that the corporation and its owner operated as a single economic entity; and (2) an overall element of injustice or unfairness. *Burtch v. Opus, L.L.C. (In re Opus East, L.L.C.)*, 480 B.R. 561, 570 (Bankr. D. Del. 2012). Both elements may be established by a common set of facts. *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp.3d. 602, 620 (D. Del. 2018) ("[U]nder Delaware law, the same facts used to show that the business entities operated as a single enterprise can lend the requisite fraud or inequity. In other words, a plaintiff making an alter ego claim can argue that the very same factual allegations it uses to show a lack of corporate separateness . . . demonstrate why it would also be an injustice for the parent to absolve itself from liability as to the plaintiff's claim against the subsidiary." (cleaned up)).

Specific facts which a court may consider in deciding whether to pierce the corporate veil under Delaware law include: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade of the dominant shareholder." *Smith v. Weinshanker (In re Draw Another Circle)*,

602 B.R. 878, 905 (Bankr. D. Del. 2019) (quoting *Doberstein v. G-P Indus.*, No. 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)). The decision to pierce the corporate veil "generally results not from a single factor, but rather some combination of them, and 'an overall element of injustice or unfairness must always be present, as well.'" *Doberstein*, 2015 WL 6606484, at *4 (quoting *MicroStrategy Inc. v. Acacia Research Corp.*, No. 5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010)).

## B. Application Of The Civil Rule 12(b)(6) Standard

The bankruptcy court concluded that NetJets did not have a colorable claim because, under the Civil Rule 12(b)(6) standard, it could not allege sufficient facts to establish either element necessary to pierce the corporate veil under Delaware law.

The Civil Rule 12(b)(6) standard requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion under Civil Rule 12(b)(6), all well-pleaded factual allegations must be accepted as true and construed in the light most favorable to the plaintiff. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). The issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence in support of its claims. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir. 1998). Although it may appear that recovery is remote, this is not the test. *Id.*

Persuading a court to pierce the corporate veil under Delaware law is a difficult task. *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del Ch. 1999). But the decision to pierce the corporate veil is an equitable remedy that depends on an amalgam of factors. Because no single factor is dispositive, dismissal under Civil Rule 12(b)(6) is appropriate only if NetJets failed to allege any facts supporting any of the factors.

But NetJets made factual allegations which, taken as true, can establish some of the factors which courts may rely upon under Delaware law, including that Debtor was not adequately capitalized, ignored corporate formalities, and functioned as a façade. In concluding that the allegations were insufficient to warrant piercing the corporate veil, the bankruptcy court improperly weighed their probative value. The court abused its discretion by determining that the claim was not colorable for purposes of derivative standing.

## CONCLUSION

Based on the foregoing, we VACATE the bankruptcy court's order denying the Standing Motion and REMAND for further proceedings consistent with this disposition.