# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 07-6046

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Farmland Industries, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| GAF Holdings, LLC, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant, | * | Western District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Philip Rinaldi; Stanley Riemann; | * | |
| Robert Terry; Pegasus Partners II, | * | |
| L.P.; Pegasus Investors II, L.P.; | * | |
| Pegasus Capital Partners, L.P.; J.P. | * | |
| Morgan Trust Company, National | * | |
| Association, in its capacity as | * | |
| Trustee of the FI Liquidating Trust, | * | |
| | * | |
| Defendants - Appellees. | * | |
| | * | |
| Black Diamond Capital Management, | * | |
| L.L.C., | * | |
| | * | |
| Defendant. | * | |

---

Submitted: July 22, 2009
Filed: July 27, 2009

---

Before KRESSEL, Chief Judge, SCHERMER and MAHONEY[1], Bankruptcy Judges.

KRESSEL, Chief Judge.

GAF Holdings, LLC appeals the bankruptcy court's[2] order dismissing with prejudice its complaint against Philip Rinaldi; Stanley Riemann; Robert Terry; Pegasus Partners II, L.P.; Pegasus Investors II, L.P.; Pegasus Capital Partners, L.P.[3]; and J.P. Morgan Trust Company, National Association in its capacity as Trustee of the FI Liquidating Trust.  We affirm.

## BACKGROUND

GAF was incorporated in 1999 in order to purchase a refinery in Coffeyville, Kansas from Farmland Industries, Inc.  For a variety of reasons, GAF was unable to obtain the necessary financing.[4]  Farmland filed a chapter 11 petition on May 31, 2002.

Farmland decided to try again to sell the Coffeyville assets, including the adjoining coke-gasification fertilizer complex.  The bankruptcy court approved

---

[1]    Judge David P. McDonald retired while the appeal to the Eighth Circuit was pending.   Judge Mahoney has replaced him on this panel.

[2]    The Honorable Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri.

[3]    For convenience, we will refer to these entities collectively as "Pegasus."

[4]    According to GAF, the first attempt depended on an "offtake" agreement with Enron and fell through in the wake of Enron's collapse, while post-September 11 energy market instability unraveled its second attempt.

2

procedures for the sale of the Coffeyville assets. GAF did not object to the bidding procedures. GAF submitted a bid, but Farmland determined GAF was not a qualified bidder, a determination which GAF did not contest. Coffeyville Resourcs, LLC, an entity which was formed by Pegasus for the purpose of purchasing the Coffeyville assets, was the only qualified bidder and entered into a purchase agreement with Farmland. At the time, Philip L. Rinaldi was an executive of Pegasus. He was also a director of Coffeyville Resources, LLC and its chief executive officer. Stanley A. Riemann was the president of the Fertilizer & Petroleum Group of Farmland Industries, Inc. Robert Terry was the CEO of Farmland Industries, Inc. Black Diamond Capital Management, L.L.C. provided financing for Coffeyville Resources, LLC's purchase of the Coffeyville assets from Farmland.

On November 14, 2003, the bankruptcy court entered an order approving the sale of the Coffeyville assets to Coffeyville Resources, LLC. In the November 14, 2003 sale order, the bankruptcy court found: 1) Coffeyville Resources, LLC's bid was the highest and best offer received for the Coffeyville assets; 2) the sale and auction procedures had been properly followed; 3) the debtor appropriately exercised reasonable business judgment in accepting Coffeyville Resources, LLC's bid; 4) GAF did not satisfy the auction and sale bidding procedure requirements and was not a qualified bidder; 5) Coffeyville Resources, LLC's bid was the only qualifying bid; 6) the debtor made a prudent business decision not to hold an auction in light of the deficiencies in the bid submissions; 7) the sale consideration to be realized by the debtor's estate pursuant to the agreement was fair and reasonable; 8) the sale agreement and the transactions contemplated by it were negotiated and undertaken at arm's length, without collusion, and in good faith; and 9) the purchase price under the sale agreement was fair and reasonable and was for sufficient value. GAF did not object to, or appeal, the sale order.

On December 19, 2003, the bankruptcy court entered its order confirming Farmland's plan. Pursuant to the plan, Farmland transferred certain assets to a

liquidating trust to liquidate and distribute proceeds to certain creditors of and interest holders in Farmland. J.P.Morgan Trust Company, National Association is the liquidating trustee of the Farmland Industries, Inc. Liquidating Trust.

GAF learned that Coffeyville Resources, LLC had offered Stan Riemann, the executive vice president of the debtor, a lucrative position with their company if they were successful in acquiring the Coffeyville assets. On February 2, 2004, GAF filed a motion pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Bankruptcy Procedure 9024 to set aside the sale order as the product of collusion among Riemann, Terry, and the purchaser. After discovery and a hearing, the bankruptcy court denied the motion. The bankruptcy court considered GAF's contention regarding both the conflict of interest and its allegation that the price of the Coffeyville assets had been artificially deflated due to an alleged "insider scheme to freeze GAF and all other bidders out of the bidding process, by-pass the auction, and guarantee CRLLC's receipt of the assets." The bankruptcy court denied GAF's motion on February 17, 2004.

The bankruptcy court issued a memorandum opinion on February 19, 2004, in which it made the following findings in support of its order denying GAF's motion: 1) "Riemann . . . never denied GAF or any other party an opportunity to conduct due diligence"; 2) "Terry . . . removed Riemann from decision-making authority in negotiations with Pegasus"; 3) "it was necessary to involve Riemann to some extent in the negotiations with Pegasus because Riemann was the senior executive in charge of the Coffeyville assets and he had the knowledge that was necessary to effectively communicate with bidders and to provide the lead members of the negotiation team with commercial information"; 4) "Terry and Riemann took no action to prevent GAF or others from speaking with third parties with ties to the Coffeyville assets"; 5) the Official Committee of Unsecured Creditors and the Official Committee of Bondholders "reviewed the asset sale and purchase agreement, referred it to their financial advisors, and concluded that the deal was in the best interests of the estate";

4

6) "The ultimate deal reached with Pegasus was conducted at arms-length and with intense negotiations"; and 7) "no evidence exists to prove that the Debtor steered the sale to Pegasus on the condition that Riemann be employed by Pegasus." GAF did not appeal the February 17, 2004 order.

On February 20, 2004, the court authorized an amendment to the asset purchase agreement order. The February 20, 2004 order reaffirmed the November 14, 2003 sale order and its findings, including that the assets were purchased in good faith, and provided that absent a stay pending appeal, the sale would be entitled to the protection of 11 U.S.C. § 363(m). GAF did not appeal the February 20, 2004 order.

On March 2, 2007, GAF filed its complaint in this proceeding alleging misconduct on the part of Rinaldi, Riemann, Terry, and Pegasus in connection with the 2004 sale of the refinery and fertilizer complex in Coffeyville, Kansas to Coffeyville Resources, LLC. In the complaint, GAF sought damages against Rinaldi, Riemann, Terry and Pegasus for intentional interference with business expectancy and conspiracy.[5] GAF also named the liquidating trustee as a defendant in the complaint, but sought no damages or other relief against it. Instead GAF sought to force the liquidating trustee to assert any interest the liquidating trust might have in any proceeds of the litigation.

Each of the remaining defendants filed a motion to dismiss the complaint for various and varying reasons. The liquidating trustee sought dismissal for lack of subject matter jurisdiction. The bankruptcy court dismissed the complaint with prejudice as an impermissible collateral attack on the prior orders approving the sale and for failing to state a claim upon which relief can be granted. *GAF Holdings, LLC v. Rinaldi (In re Farmland Industries, Inc.)*, 376 B.R. 718 (Bankr. W.D. Mo. 2007).

---

[5] GAF named Black Diamond Capital Management, L.L.C. as a defendant, but later dismissed its complaint as to it. As a result, Black Diamond Capital Management, L.L.C. is not a party to this appeal.

Alternatively, it held that GAF lacked standing. The bankruptcy court denied the liquidating trustee's motion to dismiss for lack of subject matter jurisdiction as moot.

GAF appealed the bankruptcy court order dismissing its complaint. At oral argument, we raised the issue of subject matter jurisdiction and granted the parties additional time to brief the issue. We then held that the bankruptcy court lacked subject matter jurisdiction over GAF's state law-based tort claims against non-debtor third parties. *GAF Holdings, LLC v. Rinaldi (In re Farmland Industries, Inc.)*, 378 B.R. 829 (B.A.P. 8th Cir. 2007). Accordingly, we remanded and instructed the bankruptcy court to dismiss the complaint for lack of subject matter jurisdiction. The defendants all appealed our decision to the Eighth Circuit Court of Appeals. The Eighth Circuit held that the bankruptcy court had subject matter jurisdiction because GAF's claims are "related to" the bankruptcy of Farmland Industries, Inc. within the meaning of 28 U.S.C. § 157(c)(1), and remanded to us to determine whether the bankruptcy court properly dismissed GAF's complaint. *GAF Holdings, LLC v. Rinaldi (In re Farmland Industries, Inc.)*, 567 F.3d 1010 (8th Cir. 2009).

STANDARD OF REVIEW

We review the bankruptcy court's grant of a motion to dismiss de novo. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). The applicability of collateral estoppel is a question of law which we also review de novo. *United States v. Brekke,* 97 F.3d 1043, 1046-47 (8th Cir. 1996); *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 491 (B.A.P. 8th Cir. 2005).

6

DISCUSSION

**I.     Dismissal pursuant to Rule 12(b)(6) was proper because the complaint fails to state a claim upon which relief can be granted.**

Federal Rule of Civil Procedure 8(a)(2), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, requires pleadings that state a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  F.R.Civ.P. 8(a)(2); Fed. Rules Bankr. Proc. 7008.  A complaint which fails to state a claim to relief that is plausible on its face may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)).  "[W]e accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief."  *Schaaf,* 517 F.3d at

549. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft* at 1949. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. On a 12(b)(6) motion, courts are permitted to consider matters of public record. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

    **A.**     **Because the complaint does not allege a reasonable and valid business expectancy, the alleged misconduct does not qualify as "tortious interference" under Missouri law.**

GAF alleges tortious interference with a business expectancy under Missouri law, which requires GAF to prove five elements: "(1) a contract or valid business expectancy, (2) defendant's knowledge of the contract or relationship, (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, (4) absence of justification and (5) damages." *Wash Solutions, Inc. v. PDQ Manuf., Inc.*, 395 F.3d 888, 895 (8th Cir. 2005) (citing *Serv. Vending Co. v. Wal-Mart Stores, Inc.*, 93 S.W.3d 764, 769 (Mo. App. S.D. 2002)). Without the first element, a reasonable and valid business expectancy, none of the other elements can be established:

> The existence of a valid business expectancy will not be found where the facts showed a mere hope of establishing a business relationship which was tenuous. In order to have a claim for interference with a valid

8

business expectancy, it is necessary to determine if the expectancy claimed was reasonable and valid under the circumstances alleged. If it is not, there was nothing for defendants to have interfered with.

*Serv. Vending Co.*, 93 S.W.3d at 769 (quoting *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 863 (Mo. App. E.D. 2000); *Gott v. First Midwest Bank of Dexter,* 963 S.W.2d 432, 438 (Mo. App. S.D. 1998)). *See also Cmty. Title Co. v. Roosevelt Fed. Savs. & Loan Ass'n*, 670 S.W.2d 895, 905 (Mo. App. E.D. 1984) ("Liability under this tort cannot be predicated upon speculation, conjecture or guesswork, and no fact essential to submissibility can be inferred absent a substantial evidentiary basis."). Therefore, unless GAF can prove that it had a reasonable and valid business expectancy, it cannot prevail on a claim for tortious interference.

Although the Missouri courts have found that the lowest qualified bidder on a contract for a government project would have a valid business expectancy if the bid were submitted properly, they have been unconvinced that tortious interference has occurred "where the intentional interference by the defendant consisted of a refusal to enter into a contract with the plaintiff or the plaintiff's principal, or a refusal to entertain an offer from plaintiff or plaintiff's principal." *Maupin v. Hallmark Cards, Inc.*, 894 S.W.2d 688, 696 (Mo. App. W.D. 1995) (finding no tortious interference for the defendant's failure to deal with the plaintiff after he had left his position of employment with the defendant); *Killian Constr. Co. v. Jack D. Ball & Assocs.*, 865 S.W.2d 889, 892 (Mo. App. S.D. 1993) (finding that the lowest qualified bidder who submitted a proper bid on a contract for a government project could not be said to have not had a valid business expectancy). GAF has not alleged, and cannot establish, facts

9

which would support its claim that it had a reasonable and valid business expectancy that it would have been the successful purchaser of the Coffeyville assets. Despite GAF's present assertions that its bid was wrongly rejected, it is established that GAF was not a qualified bidder in the sale of the Coffeyville assets. The bankruptcy court held as much in its November 14, 2004 and February 17, 2004 orders.[6] All GAF has alleged in its complaint is that it disagrees with the court's prior findings on that issue. Because GAF cannot establish that it had a reasonable and valid business expectancy, it has failed to state a claim for tortious interference and dismissal was proper.

We note that even if GAF had alleged facts to support the first element, reasonable and valid business expectancy, it would still fail on the third element, intentional interference by the defendant inducing or causing a breach of the contract or relationship. Because GAF did not submit a proper bid, GAF would not be able to prove that *but for* the defendants' conduct, it would have been the successful purchaser. *Cmty. Title Co.*, 670 S.W.2d at 905 ("Our courts apply essentially a 'but for' test of causation . . . we follow a two-step approach: (1) did plaintiffs actively and affirmatively take steps to induce the breach; *and* if so, (2) would the contracts have been performed absent plaintiffs' interference.").

---

[6]     As we will discuss later, GAF cannot collaterally attack those findings and the sale order is also shielded from attack by the protections 11 U.S.C. § 363(m).

10

GAF's related claim for civil conspiracy[7] depends on its claim for tortious interference, so it also fails. "[If] the underlying wrongful act alleged as a part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well." *Gettings v. Farr*, 41 S.W.3d 539, 542 (Mo. App. E.D. 2001). Because GAF's claim for tortious interference was properly dismissed, the dismissal of its civil conspiracy claim was proper as well.

## B.      The complaint is internally inconsistent and self-defeating.

There are a number of internal inconsistencies and self-defeating assertions in GAF's complaint, which provide additional support for the court's dismissal. First, GAF's complaint states that the action is based on losing a business opportunity to purchase the Coffeyville assets, as a result of the defendants' alleged "illegal misrepresentation, and concealment of material facts to the Bankruptcy Court, abuse and illegal manipulation of the judicial process." The complaint details GAF's three attempts to purchase the assets but only accuses the defendants of wrongdoing with

---

[7]      Under Missouri law, civil conspiracy can be established under either of two tests: an "ends sought" test or a "means used" test. *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. App. E.D. 2008). The "ends sought" test requires the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) *one or more unlawful acts*; and, (5) damages." *Lyn-Flex West, Inc. v. Dieckhaus,* 24 S.W.3d 693, 700 (Mo. App. E.D. 1999) (emphasis added). The "means used" test requires the following elements: "(1) two or more persons; (2) *with an unlawful objective*; (3) after a meeting of the minds; (4) *committed at least one act in furtherance of the conspiracy*; and, (5) the plaintiff was thereby damaged." *Creative Walking, Inc. v. American States Ins. Co.,* 25 S.W.3d 682, 688 (Mo. App. E.D. 2000) (emphasis added). The "means used" test applies to a claim for civil conspiracy to interfere with a business expectancy. *Envirotech* at 586.

regard to the third and final attempt. It is possible that GAF assumed that because they had unsuccessfully attempted to purchase the Coffeyville assets prior to Farmland's bankruptcy, GAF should have held a special position as a preferred bidder when Farmland decided to liquidate the Coffeyville assets. However, the complaint alleges no contract creating such a right. In fact, the complaint admits that the winning bidder purchased the assets through a court-supervised process, in which GAF was also allowed to participate. GAF admits that the court made its own evaluation of the fair value of the assets and approved the sale, and that the creditors also approved of the sale even though they knew of Riemann's conflict of interest.

Second, GAF complains that it was not initially chosen as the stalking horse bidder, but then states that the defendants eventually asked GAF to submit a stalking horse bid and that GAF rejected the opportunity because it believed it was being asked to be a "shill." Third, GAF alleges that the defendants interfered with GAF's ability to conduct due diligence prior to submitting a bid, but admits that it did eventually gain access to the data room prior to the expiration of the bidding period. GAF also admits that it was able to use information from its prior purchase attempts to determine its bid amount. Fourth, GAF complains about the asset purchase agreement itself- that it was difficult to understand, lengthy, and disorganized. However, GAF admits that it had access to the purchase agreement, which would have enabled GAF to review the terms itself. Fifth, GAF complains that the defendants misrepresented the bankruptcy court orders regarding the bidding process, but those orders are part of the public record and were available to GAF for its own perusal. Finally, GAF makes several claims that Farmland's actions harmed creditors, and alleges that the defendants breached

fiduciary duties to the estate and shareholders, but those allegations are irrelevant to the tort of interference with business expectancy.

### C. GAF lacks standing to challenge the sale.

The bankruptcy court found that GAF lacked standing to pursue its actions against the defendants. To the extent that GAF's claims stem from the defendants' alleged involvement in setting an artificially low value on the assets, we agree with the bankruptcy court that GAF was not an aggrieved party and lacked standing. The allegation that the Coffeyville assets were sold for less than fair market value is central to GAF's claim of tortious interference, but only the estate could have been aggrieved by the allegedly below fair market value sale of the Coffeyville assets. If GAF had submitted its bid in the proper form, GAF would have actually benefitted from any actions that lowered the purchase price.

## II. GAF's complaint is barred by collateral estoppel.

The bankruptcy court concluded that GAF's actions constituted an impermissible collateral attack on its prior orders. As we have already noted, in order for the bankruptcy court to enter a judgment for GAF on its claims, the bankruptcy court would have to review issues it already decided and overrule findings of its earlier orders. The doctrine of collateral estoppel bars such review. Collateral estoppel has five elements:

(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue

13

sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997).

All five elements exist here. At issue are three orders of the bankruptcy court: the November 14, 2003 sale order; the February 17, 2004 order denying GAF's Rule 60(b) motion; and the February 20, 2004 order authorizing amendment to the sale order. All three judgments were valid and final. GAF was a party to the sale proceedings. Not only was GAF active in Farmland's bankruptcy case as both a creditor and a potential purchaser of the Coffeyville assets, but GAF actually did litigate its grievances with a Rule 60(b) motion that challenged the sale order and its findings. The court even allowed discovery on the Rule 60(b) motion and held a hearing. GAF also had the right to oppose the sale prior to the court's approval and could have appealed the sale order or appealed from the Rule 60(b) order on the motion it lost, but for whatever reasons, it chose not to.

The issues presented in GAF's tortious interference action are the same as those already litigated and determined by the court in its prior orders. First, GAF alleges that Terry and Riemann prevented third parties from speaking to GAF in order to hamper its due diligence efforts, but the bankruptcy court, in its February 19, 2004 opinion to

its February 17, 2004 order, found that Terry and Riemann did not prevent GAF from speaking with third parties regarding the Coffeyville assets and that Riemann never denied GAF or any other party an opportunity to conduct due diligence. Second, GAF alleges that the sale price was too low, but the bankruptcy court found in its November 14, 2003 sale order (and reaffirmed in its February 20, 2004 order) that the sale consideration to be realized by the debtor's estate pursuant to the agreement was fair and reasonable and that the purchase price under the sale agreement was fair and reasonable. Third, GAF alleges that the purchase agreement was not negotiated or entered into in good faith, but the bankruptcy court found in its November 14, 2003 sale order (and reaffirmed in its February 20, 2004 order) that the sale and auction procedures had been properly followed, the debtor appropriately exercised reasonable business judgment in accepting Coffeyville Resources, LLC's bid, and the sale agreement and the transactions contemplated by it were negotiated and undertaken at arm's length, without collusion, and in good faith. In the court's February 19, 2004 opinion to its February 17, 2004 order, the court found that the ultimate deal reached with Pegasus was conducted at arms-length and with intense negotiations and that no evidence exists to prove that the debtor steered the sale to Pegasus on the condition that Riemann be employed by Pegasus. Finally, GAF alleges that its bid was improperly denied, but the bankruptcy court found in its November 14, 2003 sale order (and reaffirmed in its February 20, 2004 order) that Coffeyville Resources, LLC's bid was the highest and best offer received for the Coffeyville assets, that the sale and auction procedures had been properly followed, that the debtor appropriately exercised reasonable business judgment in accepting Coffeyville Resources, LLC's bid, that GAF did not satisfy the auction and sale bidding procedure requirements and was not

15

a qualified bidder, and that Coffeyville Resources, LLC's bid was the only qualifying bid.

Particularly fatal to GAF's complaint is the finding of the court that GAF was not a qualified bidder. Because GAF was not a qualified bidder, it cannot prove that it had a reasonable and valid business expectancy that it would have been the successful purchaser of the Coffeyville assets. The only way to purchase the assets was through the bidding process as approved by the court. The court found that GAF failed to meet the bidding requirements. Even though GAF alleges "newly discovered evidence," the issues are the same as those before the court when it issued its previous orders. The "newly discovered evidence" consists primarily of information from Coffeyville Resources, LLC's February 11, 2005 Form S-1, which GAF asserts could be used to prove that the sale price of the assets was lower than their fair market value. Even if we assume that the Form S-1 proves that the sale price was less than the assets' fair market value, it would not be enough to prove tortious interference, which would still require findings that attacked the prior orders of the court. GAF cannot now claim that its expectancy was valid or reasonable in spite of its failure to follow the requirements of the bidding procedures. The bankruptcy court properly dismissed GAF's actions as barred by the doctrine of collateral estoppel.

**III.    GAF's complaint is barred by section 363(m).**

The bankruptcy court found that GAF's actions were also barred by 11 U.S.C. § 363(m), which provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  "Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale.  Section 363(m) further shields third parties who rely upon the bankruptcy court's order from endless litigation."  *Official Comm. of Unsecured Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003, 1006 (8th Cir. 2003) (citing *Jefferson Co. v. Halverson (In re Paulson)*, 276 F.3d 389, 392 (8th Cir. 2002); *In re Sax,* 796 F.2d 994, 998 (7th Cir. 1986)).  The Eighth Circuit has held:

> a challenge to a related provision of an order authorizing the sale of the debtor's assets affects the validity of the sale when the related provision is integral to the sale of the estate's assets. A provision is integral if the provision is so closely linked to the agreement governing the sale that

17

> modifying or reversing the provision would adversely alter the parties' bargained-for exchange.

*In re Trism* at 1007 (citing *Cinicola v. Scharffenberger,* 248 F.3d 110, 125-26 (3d Cir. 2001); *In re Stadium Mgmt. Corp.,* 895 F.2d 845, 849 (1st Cir. 1990)).

GAF argues that § 363(m) does not bar its actions because GAF does not seek to undo the sale. However, the shield of § 363(m) protects more than just title. "A bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004). Where no party has obtained a stay of a sale pending appeal, § 363(m) moots any challenge to a sale order where "reversing or modifying the authorization to sell would affect the validity of the sale or lease." *In re Trism* at 1006-07 (citing *Cinicola,* 248 F.3d at 122).

GAF analogizes its case to *Lange v. Schropp (In re Brook Valley VII, Joint Venture)*, 496 F.3d 892 (8th Cir. 2007). In *Brook Valley*, the Eighth Circuit allowed a suit for breach of fiduciary duty in connection with a foreclosure sale where the suit did not actually challenge the foreclosure sale order. That is not the situation in the present case. As noted earlier, the November 14, 2003 sale order and its related orders contained findings as to fair market value, good faith, collusion and the arms-length nature of the transaction. Those findings were essential to the court's approval of the sale of the Coffeyville assets. Although "valid claims against sale proceeds may usually be maintained," GAF's claim is not valid because it attacks integral and

18

essential provisions of the sale order, which would, if overturned, thwart the purposes of § 363(m) by calling the validity of the sale into question. *In re Paulson*, 276 F.3d at 392 (citing *Wintz v. Am. Freightways, Inc. (In re Wintz Cos.),* 219 F.3d 807, 811 (8th Cir. 2000); *MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 93 (2d Cir. 1988)).

Sales under 11 U.S.C. § 363, unlike the foreclosure sale at issue in the *Brook Valley* case, are entitled to heightened protections. If a disgruntled bidder were permitted to attack the legitimacy of a sale years later and essentially disgorge the profits made by parties to the sale, it would undermine the protections of § 363(m), inject uncertainty and instability into the sale process, and ultimately chill bidding and decrease the prices paid by cautious bidders who fear endless litigation. "Finality and regularity of proceedings are significant factors whenever the courts are involved in a sale of property, for devotion to those principles encourages fervent bidding and ensures that interested parties will sincerely extend their best and highest offers at the auction itself." *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564 (8th Cir. 1997). As the bankruptcy court noted, GAF does not allege fraud, and the court had already had an opportunity to review the sale price of the assets in light of Riemann's conflict of interest and other alleged collusion by the defendants. Even when the bankruptcy court revisited the issue of price on GAF's Rule 60(b) motion, it found no reason to believe the price was grossly inadequate. "At some point, such as when the court actually enters an order approving the sale, expectations become sufficiently crystallized so as to render it improper to frustrate anticipated results except in the limited circumstances where there is a grossly

inadequate price or fraud in the conduct of the proceedings." *Id*. at 565. We agree with the bankruptcy court that GAF's actions are barred by § 363(m).

## CONCLUSION

GAF's actions fail because the bankruptcy court previously found that GAF was never a qualified bidder, a circumstance that precludes any finding that GAF had a valid and reasonable business expectancy or that but-for the alleged wrongdoing, GAF would have been the successful purchaser. Because GAF's complaint was facially deficient, a collateral attack on prior orders, and barred by 11 U.S.C.§ 363(m), the bankruptcy court properly dismissed it. We affirm.

---