# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

———————————————

No. 17-6017

———————————————

In re: Veg Liquidation, Inc., formerly known as Allens, Inc.; All Veg, LLC

*Debtor*s

------------------------------

R. Ray Fulmer, II

*Plaintiff - Appellant*

v.

Fifth Third Equipment Finance Company; Ryder Integrated Logistics, Inc.; International Paper Company; URS Real Estate, LP; Ball Metal Food Container, LLC; Syngenta Seeds, Inc.; Teneo Securities, LLC; Andrew Torgrove; Lazard Middle Market, LLC; Lazard Freres & Co., LLC; Alvarez & Marsal, North America, LLC; Alvarez & Marsal Private Equity Performance Improvement, LLC; Jonathan Hickman; Sager Creek Vegetable Company, formerly known as Sager Creek Acquisition Corp.; 1903 Onshore Funding, LLC; Cortland Capital Market Services, LLC; Sankaty Credit Opportunities, IV, L.P.; Sankaty Credit Opportunities, IV, L.P. (Caymanian); Sankaty Middle Market Opportunities Fund, L.P.; Sankaty Middle Market Opportunities Fund, L.P. (Caymanian); Does 1-100; Alvarez & Marsal Holdings, LLC; 412, Inc., formerly known as Sager Creek Vegetable Company, formerly known as Sager Creek Acquisition Corp.; Sankaty Credit Opportunities, (Offshore Master) IV; Sankaty Middle Market Opportunities Fund, (Offshore Master), L.P.

*Defendants - Appellees*

————————

Appeal from United States Bankruptcy Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: February 23, 2018
Filed: March 26, 2018

_____

Before SALADINO, Chief Judge, SHODEEN and SANBERG, Bankruptcy
Judges.

_____

SALADINO, Chief Judge.

The Appellant, R. Ray Fulmer, II, Chapter 7 Trustee, appeals the May 2, 2017, and September 26, 2016, orders of the bankruptcy court[1] dismissing his complaint and denying leave to file a further amended complaint. We have jurisdiction over this appeal from the final orders of the bankruptcy court. *See* 28 U.S.C. § 158(b).

For the reasons stated below, we affirm.

### *STANDARD OF REVIEW*

This court reviews the bankruptcy court's grant of a motion to dismiss de novo. *See GAF Holding, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 408 B.R. 497, 503 (B.A.P. 8th Cir. 2009), *aff'd*, 639 F.3d 402 (8th Cir. 2011). Although a court must accept the factual allegations in a complaint as true, a complaint must contain sufficient factual matter to state a claim that is plausible on its face to survive a motion to dismiss. *Id.* The applicability of collateral estoppel is a question of law

_____

[1]The Honorable Ben T. Barry, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

which we also review de novo. *United States v. Brekke*, 97 F.3d 1043, 1046-47 (8th Cir.1996); *Osborne v. Stage (In re Stage)*, 321 B.R. 486, 491 (B.A.P. 8th Cir. 2005). The denial of a motion for leave to amend a complaint is reviewed for abuse of discretion, although when a motion for leave to amend is denied on the basis of futility, the underlying legal conclusions are reviewed de novo. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

## *BACKGROUND*

The Debtors, Veg Liquidation, Inc., f/k/a Allen's, Inc., and All Veg, LLC, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on October 28, 2013. On November 22, 2013, the Debtors filed a motion for an order authorizing, *inter alia,* bidding procedures for the sale of substantially all of the assets of Allens, Inc., free and clear of liens pursuant to § 363(f) of the Bankruptcy Code. On December 23, 2013, the Debtors followed up their bidding procedures motion with a motion to sell in accordance with the bidding procedures and identifying a "Stalking Horse" bidder. After a contested hearing, the bankruptcy court issued an order on January 7, 2014, which granted the bidding procedures motion, authorized the designation of Seneca Foods Corporation as the Stalking Horse purchaser, established an auction procedure, and set a hearing date to approve the results of the auction.

On January 9, 2014, the Debtors filed a Notice of Bid Procedures, Sale Hearing and Objection Deadlines in Connection With the Sale of Substantially All of the Debtors' Assets. On January 10, 2014, that notice and the bidding procedures order were served by Epiq Systems (the noticing agent for the Debtors) by United States mail on more than 5,000 creditors and parties in interest.

The auction commenced on February 3, 2014, and concluded on February 6, 2014, with Seneca's Stalking Horse agreement as the opening bid. Qualifying bids

were also submitted by Sager Creek Acquisition Corporation (an entity formed by a group of second lienholders) and a third party, McCall Farms. Seneca did not submit any further bids, but Sager Creek and McCall Farms both increased and modified their bids during the auction. Ultimately, Sager Creek was declared the successful bidder with McCall Farms as the backup bidder. The day after the sale, the Debtors filed a notice identifying the successful bidder along with a draft purchase agreement. On February 10, 2014, written transcripts of the auction were filed with the bankruptcy court.

The sale hearing took place as scheduled on February 11, 2014. Various objections were filed, but prior to or during the hearing all objections were either settled, withdrawn, or continued. On February 12, 2014, the bankruptcy court issued its detailed order ("Sale Order") approving the sale to Sager Creek. No appeals were filed. The closing took place on February 28, 2014.

On June 6, 2014, the motion of the Debtors to convert the cases to Chapter 7 was granted. The Appellant was subsequently appointed the Chapter 7 trustee. On February 26, 2016, the Trustee filed his initial complaint against the Appellees (the Defendants in the adversary proceeding from which this appeal arose), and filed his first amended complaint on April 28, 2016. The amended complaint names at least 25 separate defendants that the Trustee places into three categories – the "Committee Defendants," who were members of the unsecured creditor's committee appointed in the Chapter 11 bankruptcy proceeding of the Debtors; the "Fiduciary Defendants," who are various financial advisors and restructuring officers retained by the Debtors during the bankruptcy case; and the "Sager Creek" and/or "Second Lien Holders," Defendants who held junior lienholder interests secured by assets of the bankruptcy estate.

The amended complaint includes 14 claims for relief entitled: Breach of Fiduciary Duty, Fraudulent Transfer, Conspiracy to Commit Fraud on the Court,

Aiding and Abetting Conversion and Fraud on the Court, Conversion, Inducing Breach of Contract, Intentional Interference With Contractual Relations, Intentional Interference With Prospective Economic Relations, Negligent Interference With Prospective Economic Relations, Deceptive Trade Practices, Rescission/Reformation, Unjust Enrichment, Equitable Subordination and Claim Bar, and Declaratory Relief. All of the causes of action arise from the sale of substantially all of the assets of the Debtors to Sager Creek that took place during the Chapter 11 case.

The Defendants filed an initial motion to dismiss on July 1, 2016. On September 29, 2016, the bankruptcy court dismissed two causes of action: the cause of action for fraud on the court under Federal Rule of Civil Procedure 60(d) and collusion under 11 U.S.C. § 363(n). The court denied the motion to dismiss all other causes of action but held in abeyance the Defendants' argument that the action was a collateral attack on the Sale Order. On November 2, 2016, the Defendants filed a second stage motion to dismiss. On May 2, 2017, asserting the doctrine of res judicata and the finality of the Sale Order, the bankruptcy court granted the second stage motion to dismiss, thereby dismissing all remaining causes of action. This appeal followed.

## DISCUSSION

The Trustee describes his complaint as seeking damages against the Defendants for their conduct before and during the Debtors' Chapter 11 proceeding. He believes the Defendants concealed agreements and manipulated auction bids in order to take more than $107 million of assets from the estate for no value. The Defendants' view it quite different. They consider the Trustee's action as an improper collateral attack on a final sale order.

The Trustee's briefing asserts a wide range of factual and legal issues. However, we believe the ultimate issue presented is whether the finality of the Sale

Order, together with statutory provisions and procedural rules, effectively defeats the Trustee's claims. We believe it does and the bankruptcy court properly dismissed the adversary proceeding.

1.    *Dismissal*.

Federal Rule of Civil Procedure 8(a)(2), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. A complaint which fails to state a claim to relief that is plausible on its face may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

2.    *The Sale Order*.

The bankruptcy court's Sale Order made multiple findings about the sale and the sale process. According to the Sale Order, the bankruptcy court did so based "upon the record at the Sale Hearing and the full record of this case, including the record established at the Auction." The bankruptcy court's findings included:

- actual written notice of, and a reasonable opportunity to object to or be heard, with respect to the sale was provided to all known parties in interest (*id.* ¶ H);

- the disclosures made by the Debtors in the Sale Motion, the Bidding Procedures Motion, the Notice of Auction and Sale Hearing and in related documents filed with the court and/or served on parties in interest were good, complete, and adequate (*id.* ¶ L);

- the Bidding Procedures were non-collusive, proposed and executed in good faith as a result of arm's length negotiations, and were substantively and procedurally fair to all parties, and the Debtors conducted the sale process in accordance with, and had otherwise complied in all respects with, the Bidding Procedures Order (*id.* ¶ M);

- all of the acquired assets were subject to a competitive and good faith bidding process (*id.* ¶ O);

- the consideration to be provided by the buyer was fair and reasonable, and was the highest and otherwise best offer for the acquired assets, and was in the best interests of the Debtors, their creditors and estates, and constituted reasonably equivalent

value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Transfer Act and similar laws; and that it will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other available alternative (*id.* ¶ Y);

- the Debtors demonstrated compelling circumstances and a sound business purpose and justification for the sale (*id.* ¶ Z);

- the buyer was a good faith purchaser under § 363(m) of the Bankruptcy Code and was entitled to all of the protections afforded thereby and otherwise had proceeded in good faith in connection with the sale (*id.* ¶ BB); and

- the Debtors and the buyer had not engaged in any conduct that would permit the sale to be avoided under § 363(n) of the Bankruptcy Code (*id.* ¶ CC).

The Trustee's allegations in the amended complaint against the Defendants are inconsistent with the specific findings of the Sale Order. Stated another way, in order for us to find that the Trustee's claims are plausible, we would have to disregard many of the specific findings set forth in the Sale Order. Therefore, we begin by examining the Trustee's arguments with respect to the effect of the Sale Order.

The Trustee argues that res judicata with regard to the Sale Order cannot apply to him due to a lack of privity. He also believes the Sale Order findings were made without the introduction of evidence and are, therefore, void or unenforceable, and in any event are "boilerplate" and not entitled to any weight on appeal. The Trustee

also appears to argue that the Sale Order is a "void" order due to insufficient notice related to the sale and the bidding procedures.[2]

3. *11 U.S.C. § 363(m)*.

Sales under 11 U.S.C. § 363 are entitled to heightened protections "by virtue of the nature of rights transferred under 11 U.S.C. § 363." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d. 721, 732 (8th Cir. 2004). A sale under § 363 confers "rights good as against the world, not merely rights good as against parties to the sale," and is thus shielded from collateral attack. *Id.* at 731.

In this regard, 11 U.S.C. § 363(m) provides:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, . . ., unless such authorization and such sale or lease were stayed pending appeal.

As indicated, no party appealed the Sale Order. Further, the Trustee was not appointed until four months after the Sale Order was issued and did not commence the underlying adversary proceeding until more than two years after the Sale Order. The Trustee argues that § 363(m) is inapposite because he is not attempting to appeal the Sale Order. Instead, he is seeking damages against various Defendants – whom he refers to as "strangers" to the Sale Order – for actions relating to the sale.

---

[2]Interestingly, despite these assertions, the Trustee repeatedly insists that he is not seeking to collaterally attack the sale order.

The Trustee's semantics are not persuasive.

> Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale. *[In addition,] section 363(m) . . . shields third parties who rely on the bankruptcy court's order from endless litigation.*

*Official Comm. of Unsec. Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003, 1006 (8th Cir. 2003) (internal citation omitted) (emphasis added). In *Trism*, the Eighth Circuit held that challenging related provisions of a sale order "affects the validity of the sale when the related provision is integral to the sale of the estate's assets." *Id.* at 1007 (citing *Cinicola v. Scharffenberger*, 248 F.3d 110, 125-26 (3d Cir. 2001)). An integral provision is one that "is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange." *Id.* Further, as we noted in *In re Farmland Indus., Inc.*, 408 B.R. 497, 508 (B.A.P. 8th Cir. 2009), *aff'd,* 639 F.3d 402 (8th Cir. 2001), the shield of § 363(m) protects more than just title to the property that is sold. It "is a judgment that is good as against the world, not merely as against parties to the proceedings." *Id.* (quoting *Regions Bank*, 387 F.3d at 732)).

The Trustee believes that the detailed findings in the Sale Order were not "integral provisions" to the sale as defined by the Eighth Circuit in *Trism*. Specifically, the Trustee asserts that the bankruptcy court failed to review the asset purchase agreement that was approved by the Sale Order to determine whether the findings were integral to the sale. He further asserts that the conditions to closing set forth in the asset purchase agreement do not specifically require the findings the bankruptcy court made in the Sale Order. Again, the Trustee's argument is not persuasive.

First, the Trustee fails to recognize that one of the specific conditions of the asset purchase agreement is the approval of the Sale Order by the bankruptcy court. Second, the Trustee's assertion that the bankruptcy court had not reviewed the asset purchase agreement is an unsupported speculation. In fact, the Sale Order specifically references the asset purchase agreement which is attached to the Sale Order. The Trustee hangs his hat on the bankruptcy court not referencing a review of the asset purchase agreement in the dismissal order – some three years later. However, in the dismissal order, the bankruptcy court clearly discussed *Trism* and its "integral provision" requirement. In any event, the Trustee's implication that the bankruptcy court's specific findings in the Sale Order were somehow not integral to the sale is nonsensical. The findings regarding proper notice, lack of collusion, good faith, fair and reasonable consideration, etc., were all necessary and integral to the bankruptcy court's approval of the sale.[3]

4.      *Privity*.

A judgment's preclusive effect is defined by claim and issue preclusion, which are collectively referred to as "res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Since the Trustee was not even appointed until months after the entry of the Sale Order, he believes he could not be in privity with the parties to the Sale Order and the Sale Order findings should not be binding upon him. The bankruptcy court found that the Trustee *is* in privity with the Debtors and the creditors, and bound by the terms of the Sale Order.

We believe it is unnecessary to chase the Trustee down this particular rabbit hole. The foregoing discussion regarding the "heightened protections" and expansive

---

[3]In an ironic twist, the trustee argues in his brief that the bankruptcy court was required to make such specific findings in connection with a sale under § 363(b). As a result, it seems somewhat disingenuous for the Trustee to argue that the findings were not "integral" to the sale.

binding effect of an order under § 363(m) approving a sale under § 363(b) makes this issue moot. Privity is irrelevant.

5.    *Jevic*.

Notwithstanding the bar of § 363(m), the Trustee asserts a number of additional theories as to why we should find the Sale Order as a whole, or many of its provisions, void or unenforceable. First, the Trustee argues that the bankruptcy court should not have relied upon the Sale Order because it resulted in non-consensual distributions in violation of the absolute priority rule, as prohibited by *Czyzewski v. Jevic Holding Corp.*, ___ U.S. ___, 137 S. Ct. 973 (2017).

In *Jevic*, the Supreme Court held that structured dismissals must follow the same priority rules as required for a Chapter 11 plan confirmation. However, the Supreme Court carved out from its ruling interim distributions that further "significant Code-related objectives." *Id.* at 985. Examples of such distributions include first-day wage orders and critical vendor orders that may violate priority rules. But, where a structured dismissal does not "preserve the debtor as a going concern," the Supreme Court concluded that the violation of ordinary priority rules did not serve "any significant offsetting bankruptcy-related justification." *Id.* at 986.

The Trustee's reliance on *Jevic* – which was decided three years after the Sale Order was issued – is misplaced. First, *Jevic* was the result of a timely appeal of the structured dismissal order. Here, no appeal was ever taken from the Sale Order. Second, regardless of whether the Sale Order did involve improper priority-skipping distributions (an issue we need not address), the bar of § 363(m) still applies since no appeal was taken and no stay of sale was ever issued. *See Mission Product Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC),* 879 F.3d 376, 388 (1st Cir. 2018) (refusing to consider a *Jevic* challenge to a § 363 sale because "section 363(m) applies even if the bankruptcy court's approval of the sale was not proper . . . . "). *See*

-12-

*also United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260, 270 (2010) (recognizing that a judgment is not void simply because it is or may have been erroneous). Since this case does not arise from an appeal of the Sale Order, *Jevic* has no application.

### 6. *Lack of Evidence for Sale Order Findings.*

The Trustee next argues that his claims cannot be subject to the § 363(m) bar, or issue and claim preclusion, based upon "uninformed and unsupported findings contained in the Sale Order." In support of this point, he argues that the bankruptcy court did not take any formal evidence at the hearing resulting in the Sale Order and, therefore, could not have made the detailed findings therein.

In making that argument, the Trustee overlooks two important points. First, the bankruptcy court *did* take evidence in an earlier contested hearing authorizing the Debtors to proceed with a § 363 sale – which is a point the trustee acknowledges in his brief. Also, evidence of the results of the sale were filed with the court, and the transcripts of the sale auction were also filed with the court prior to the sale hearing. The Sale Order very clearly indicates that it is based on the "entire record" of the case, not just what was formally presented as evidence at the final sale hearing.

Second, even if the specific findings set forth in the Sale Order are mere "boilerplate" as the Trustee suggests, no party appealed the Sale Order. The Trustee cites to the United States Supreme Court decision in *Protective Committee v. Anderson,* 390 U.S. 414, 434-441 (1968), for the proposition argued in his brief that the Supreme Court "rejected conclusory, boiler-plate bankruptcy court findings as the basis for an enforceable bankruptcy court order." However, the Supreme Court did no such thing. Instead, it found that the record failed to support the findings of the trial court in the very order being appealed. That is not the case here. Whether the

-13-

Trustee likes the specific findings of the Sale Order or not, they are the detailed findings of the bankruptcy court, were not appealed, and are final.

7.    *Rule 60.*

Recognizing the possibility that his claims may be barred by the finality of the Sale Order and § 363(m), the Trustee then turns to Federal Rule of Civil Procedure 60 (made applicable in cases under the Bankruptcy Code by Federal Rule of Bankruptcy Procedure 9024). Relief from a judgment or order under Rule 60(b)(1) - (3) must be commenced no more than one year after entry of the judgment or order. Fed. R Civ. P. 60(c)(1). Because the adversary proceeding was not filed for more than two years after the entry of the Sale Order, it is too late for the Trustee to seek relief under Rule 60(b)(1) - (3).

However, a request for relief under Rule 60(b)(4), (5) and (6) may be made "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Under those sections, a court may relieve a party from a final judgment or order if the judgment is "void" (subsection 4), if applying it prospectively is no longer equitable (subsection 5), or for any other reason that justifies relief (subsection 6). The Trustee argues that one or more of those grounds for relief should apply – mostly, it seems, for alleged due process violations.

The primary due process concern of the Trustee appears to be whether proper notice and opportunity to participate in the sale process were provided to all creditors and parties in interest. Here, the Trustee invents a noticing defect that does not exist. It is undisputed that on January 15, 2014, notice of the bidding procedures order and the auction and sale hearing were provided to all creditors and parties in interest. As a result, all of those creditors and parties in interest had an opportunity to participate in the sale process and object to approval of the sale. We liken this to the situation in *Espinosa* where the United States Supreme Court said:

-14-

Rule 60(b)(4) strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute. Where, as here, a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate, and the party's failure to avail itself of that opportunity will not justify Rule 60(b)(4) relief.

559 U.S. at 276.

The Trustee also finds due process concerns related to the bankruptcy court's conduct of the sale hearing, but a review of that transcript makes clear that the bankruptcy court did not *deny* anyone the opportunity to present evidence, examine witnesses, or otherwise participate in the hearing. In fact, as the Trustee readily acknowledged, on more than one occasion during the sale hearing, the bankruptcy court specifically asked the participants if they wanted to present any testimony or additional evidence. Accordingly, the Trustee's due process concerns related to notice and opportunity to participate are without merit.

As part of his due process arguments, the Trustee asserts that the application of § 363(m) in this case "violates the Fifth Amendment Due Process Clause, Article III and the Separation of Power Doctrine." For this argument, he suggests that the bankruptcy court interpreted § 363(m) to bar de novo review by an Article III court unless the Article I court issuing the order grants a discretionary stay. In making that argument, the Trustee seems to forget that a stay of any judgment can be obtained from an Article III court – the United States District Court (if the appeal is pending in that court) – even if it is denied by a bankruptcy court. If any party had appealed the Sale Oder, that party could have elected to have the appeal heard by the United

-15-

States District Court. The Trustee's due process allegations based on the Constitution are also without merit.

8. *Miscellaneous Allegations.*

In his brief, the Trustee's many allegations are often mixed together and repeated under various theories for what he considers to be nefarious conduct and lack of disclosure by virtually everyone involved in the asset sale. He seems to believe that there was something legally improper about a change in control of the Debtors that apparently took place months before the bankruptcy filing. He also expresses concerns about a change during the auction to the sale terms and assets to be sold, despite the fact that the bidding procedures expressly contemplated such changes. He thinks it was improper for the second lienholder group to form an entity to bid on the assets at the sale, or for existing creditors to agree to certain funding arrangements with a potential purchaser at the sale in the hope of securing future business from the successor. He believes all these things and more somehow amount to collusion or fraud on the court or some other theory that would allow him to, years later, seek damages from the parties involved in the sale.

The Trustee uses the terms "fraud" and "fraud on the Court" and "collusion" loosely and often. However, once the smear of the Trustee's conclusory allegations is removed, we agree with the bankruptcy court that the amended complaint does not cite to any facts that would elevate such claims from a mere possibility to plausibility. *See Ashcroft v. Iqbal*, 556 U.S. at 678 and *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557.

Absent specific facts showing fraud or collusion, we agree with the bankruptcy court that it is now too late to bring these claims. The miscellaneous allegations all are contradicted by the specific findings of the final Sale Order. Between the operation of § 363(m) and Rule 60, the Trustee's claims are barred. He professes that

-16-

he is simply seeking damages from "strangers to the Sale Order," but that is not true. As the bankruptcy court recognized, all of the Defendants were involved in the sale of the Debtors' assets in one way or another. Some were junior lienholders, some were estate professionals, and others were creditors and committee members. The Defendants are far from being strangers to the Sale Order. As such, they are entitled to the protections of § 363(m), which "shields third parties who rely on the bankruptcy court's order from endless litigation." *Trism, Inc.*, 328 F.3d at 1006.

9.      *Amended Complaint*.

Finally, the Trustee takes issue with the bankruptcy court's denial of his request to file yet another amended complaint. A review of that proposed amended complaint reveals that it simply repackages the same assertions of nefarious conduct on the part of the Defendants into additional causes of action. Approval of a request for leave to amend a complaint requires a showing that "such an amendment would be able to save an otherwise meritless claim. *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir.1999) (citing *Ferguson v. Cape Girardeau Cnty.,* 88 F.3d 647, 650 (8th Cir.1996)). We agree with the bankruptcy court that the proposed amended complaint would not survive a further motion to dismiss. Therefore, the bankruptcy court did not abuse its discretion in denying leave to file an amended complaint.

## *CONCLUSION*

For the foregoing reasons, we affirm the orders of the bankruptcy court.

_____