# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 18-6001

_____

In re: Richard Michael Heyl; Jennifer Heyl

*Debtor*s

------------------------------

Steve Conway; LorCon LLC #1
*Plaintiffs - Appellants*

Lorcon LLC #4
*Plaintiff*

v.

Richard Michael Heyl
*Defendant - Appellee*

Heyl Partners Station Plaza, LLC
*Defendant*

_____

Appeal from United States Bankruptcy Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2018
Filed: October 18, 2018

_____

Before SALADINO, Chief Judge, DOW and SANBERG, Bankruptcy Judges.

_____

SALADINO, Chief Judge.

The Appellants, Steve Conway and Lorcon LLC #1, appeal the order of the Bankruptcy Court[1] dismissing their adversary complaint, as well as an order denying their motion to reconsider the dismissal order. We have jurisdiction over this appeal. See 28 U.S.C. §158(b). For the reasons that follow, we affirm.

## FACTUAL BACKGROUND

Steve Conway, through his entity LorCon LLC #1 ("LorCon")[2], invested in Heyl Partners Station Plaza ("Heyl Partners") and Johns Folly Ocean Villas, LLC ("Johns Folly"), two real estate development ventures Debtor Richard Michael Heyl had promoted to Conway, a principal of LorCon. In early 2007, when Heyl Partners ran into severe financial difficulties, Heyl presented Conway andLorCon with the option of transferring the interest from Heyl Partners to either Johns Folly or Madaford Gardens, LLC. Appellants opted to transfer the Heyl Partners investment into an additional investment in Johns Folly. The value of appellant's transfer of the investment from Heyl Partners to Johns Folly was negotiated in large part based on Debtor's representations concerning an asserted recent investment in Johns Folly by an apparent insider, Mary Beth Kinsella. After the 2007 transfer of its interest from Heyl Partners to Johns Folly, Appellants also fulfilled two large capital calls by Johns Folly, further increasing their investment. Ultimately, the Johns Folly venture also failed.

---

[1] The Honorable Charles E. Rendlen, III, United States Bankruptcy Judge for the Eastern District of Missouri.

[2] Conway continues to assert an interest in the claims appellants have against Heyl, despite the prior appeals in which both this Bankruptcy Appellate Panel (case no. 13-6022) and the Eighth Circuit Court of Appeals (case no. 14-1453) determined that Conway did not have standing to appeal. That issue is immaterial to the outcome of this appeal and will not be addressed further.

2

On August 31, 2009, Debtors Richard M. Heyl ("Heyl") and Jennifer Ann Heyl filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division. In Schedule F (general unsecured claims) of their petition, they listed an unsecured, undisputed, non-contingent, liquidated debt in the amount of zero dollars owed to Steven Conway ("Conway") for "[p]otential liability for investment in JFOV, LLC." The bankruptcy was a "no asset" case, so no proof of claim deadline was set. Notwithstanding, Conway filed a proof of claim in the name of LorCon, asserting an unsecured debt in the amount of $79,500.00, representing an investment loss related to JFOV, LLC (the "Debt").

On August 27, 2010, Appellants commenced an adversary proceeding in the Bankruptcy Court (the "2010 Adversary Proceeding") against Heyl, alleging false pretenses, false representation and actual fraud related to the JFOV, LLC investment and seeking a determination that the Debt is excepted from discharge under § 523(a)(2)(A). On February 13, 2012, the Bankruptcy Court entered Judgment in favor of Heyl. The Bankruptcy Court found that while Heyl had made false statements to Conway that were relied upon by Conway, the Debt was not the proximate result of the representations. Therefore, Conway failed to meet his burden of proof as to proximate causation.

Appellants did not appeal the judgment in the 2010 Adversary Proceeding. However, on February 11, 2013, Conway and LorCon filed their Motion for Relief from Judgment, alleging that "newly discovered evidence" had been obtained, warranting relief from the judgment in the 2010 Adversary Proceeding. On April 8, 2013, the Bankruptcy Court denied that motion.

Appellants appealed the denial of their motion to the Bankruptcy Appellate Panel. LorCon was subsequently dismissed from the appeal after its lawyer withdrew from representation. On December 12, 2013, the Bankruptcy Appellate Panel entered an order dismissing the appeal, concluding that Conway lacked

standing to pursue the appeal because he did not have a pecuniary interest in the outcome. On further appeal, the Eighth Circuit Court of Appeals affirmed.

Meanwhile, in October of 2012, Conway made a written complaint to the Enforcement Section of the Missouri Securities Division of the Office of Secretary of State (the "Enforcement Section"), raising claims against Heyl and an affiliated limited liability company known as Heyl Partners Station Plaza, LLC ("HPSP") asserting the fraudulent sale of investment interests in HPSP and JFOV. The Enforcement Section investigtated and on April 23, 2015, a Consent Order (the "Consent Order") was entered into by Heyl, HPSP, and the Enforcement Section.

In the Consent Order, Heyl and HPSP expressly did not admit or deny any of the allegations made, but rather consented to the entry of the Consent Order solely for the purpose of resolving that proceeding before the Enforcement Section. The Consent Order required Heyl and HPSP to pay a fine and costs to the state of Missouri only in the event that they violated the Consent Order within a two-year period after its execution. The Consent Order acknowledged that the Missouri Resident who initiated the complaint had incurred a $79,500.00 investment loss but did not include a monetary judgment or any other form of relief in favor of Conway, LorCon #1, and/or any other creditors.

On October 14, 2015, Conway, LorCon #1, and LorCon, LLC #4[3] filed a new adversary complaint with the Bankruptcy Court, which is the adversary proceeding from which this appeal arose (the "2015 Adversary Proceeding"). This time, Appellants sought to except the Debt from Heyl's discharge under 11 U.S.C. § 523(a)(19).

On March 8, 2017, Heyl filed his Amended Motion to Dismiss the 2015 Adversary Proceeding pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a

---

[3] LorCon #4 was not made a party to the instant appeal.

claim upon which relief can be granted. Conway and the LorCon entities filed a Response to the Amended Motion to Dismiss objecting to dismissal. On December 11, 2017, the Bankruptcy Court entered its Order granting the Motion to Dismiss ("Dismissal Order") on seven (7) separate grounds. Thereafter, the Court entered its Order denying a Motion to Reconsider. Conway and LorCon #1 have appealed.

## STANDARD OF REVIEW

"A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo." *Larson v. Foster (In re Foster)*, 516 B.R. 537, 541 (B.A.P. 8th Cir. 2014). The granting of a motion to dismiss by a bankruptcy court is reviewed de novo by the Bankruptcy Appellate Panel. *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir.2008); *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.)*, 408 B.R. 497, 503 (B.A.P. 8th Cir. 2009).

## DISCUSSION

Federal Rule of Civil Procedure 8(a)(2), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, requires pleadings that state a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. 8(a)(2); Fed. Rules Bankr.Proc. 7008. A complaint which fails to state a claim to relief that is plausible on its face may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, ─── U.S. ────, ────, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal citations omitted; quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[W]e accept as true all of the factual allegations contained in the complaint, and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft* at 1949. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

Here, Appellants assert that the Debt is excepted from the discharge Heyl received in his underlying bankruptcy case pursuant to 11 U.S.C. § 523(a)(19). That section provides that "[a] discharge under section 727 . . . does not discharge an individual debtor from any debt –

> (19) that –
>     (A) is for –
>         i. the violation of any of the Federal securities laws . . ., any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

6

ii. common law fraud, deceit, or manipulation in connection with the purchase or sale of any security;

and

(B) results . . ., from –

i. any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

ii. any settlement agreement entered into by the debtor; or

iii. any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19). To discern the requirements of section 523(a)(19), this Court begins its inquiry with the statutory language itself. *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' " *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)). Under the statutory languge, it is clear that two elements must exist to state a claim under § 523(a)(19): (A) a violation of securities law or fraud in connection with the sale of securities; and (B) a resulting debt that was memorialized in a judgment, settlement or decree. *McKinny v. Allison (In re Allison)*, 2012 WL 3775982, at * 3 (Bankr. E.D.N.C., Aug. 29, 2012).

The bankruptcy judge gave several alternative reasons for granting the motion to dismiss and the Appellants assert in their briefs on appeal no less than twenty-eight separate assignments of error by the Bankruptcy Court. However, we need only address one issue--that is, whether the Bankruptcy Court erred in finding

that the debt at issue did not "result … from" the Consent Order as required by 11 U.S.C. § 523(a)(19)(B).

In their Amended Complaint, Appellants describe their cause of action as: "This is a Complaint requesting that the Court declare that, as a result of a Consent Order entered against Debtor on April 23, 2015, the Debt described below is nondischargeable under 11 U.S.C. § 523(a)(19)." Appellants continued this theme in their briefs on appeal and at oral argument, asserting that their "§ 523(a)(19) claims did not exist" until the Consent Order was issued. Appellants' entire case is premised on a purported debt that "results … from" the Consent Order.

The Consent Order was issued by the Enforcement Section of the Missouri Securities Division of the Office of Secretary of State in an administrative proceeding it commenced against debtor Richard Heyl and his company, Heyl Parnters Station Plaza, LLC. Appellants are not parties to or signatories on the Consent Order. However, appellant Steven Conway asserts that he is the "Missouri Resident" referenced in the Consent Order and whose written complaint to the Enforcement Section resulted in the investigation and Consent Order.[4]

The Bankruptcy Court found that no debt to Appellants resulted from the Consent Order, and we agree. The only debt that resulted from the consent order is a debt from Heyl and his company to the Enforcement Section for a civil penalty and costs. By its plain languge, the Consent Order does not establish any debt owed to Appellants or anyone else. The closest the Consent Order comes to doing so is a finding of fact that the "Missouri Resident" lost a total of Seventy Nine Thousand Five Hundred Dollars ($79,500.00) from investments with Heyl. As the Bankruptcy Court noted, that is not a judgment or a right of collection; it is just a finding of a loss on investments.

---

[4] There is some dispute as to whether both appellants or just Mr. Conway filed the Complaint with the Enforcement Division, but that distinction is irrelevant.

Appellants seem to be arguing that the mere finding by the Enforcment Section of a securities law violation by Heyl automatically results in a debt owed to Appellants. However, Appellants seem to be combining the two separate elements of a claim under § 523(a)(19)—a debt that is "for" a violation of securities law or fraud in connection with the sale of securities; and "results from" a judgment, settlement or decree. While the Consent Order may help Appellants satisfy the "for" element, it simply does not "result" in a debt owed to Appellants.

A similar situation was presented to the Ninth Circuit Court of Appeals in *Tradex Glob. Master Fund Spc Ltd. v. Chui*, 559 B.R. 520, 525-26 (N.D. Cal. 2016), *aff'd sub nom. Tradex Glob. Master Fund SPC LTD v. Chui*, 702 F. App'x 632 (9th Cir. 2017). In *Tradex*, the debtor/investment advisor entered into a consent order with the SEC, but there was no finding of any debt owed to the investor. *Id*. Thus, because the debt allegedly owed to the investor did not "result from" the SEC order, that order did not satisfy Section 523(a)(19*). Id.*

Similarly, the only debt established by the Consent Order is the debt to the Enforcment Section for civil penalty and costs. There was no finding of any other liability. We agree with the Ninth Circuit's analysis in *Tradex* that the debt must actually result from the order the plaintiff is relying upon. We also agree with the Bankruptcy Court that the Consent Order—which is the order Appellants are relying upon--does not result in a debt owed to Appellants. There simply is no causal relationship between the Consent Order and Appellants' claim. Stated another way, Appellants may or may not have a claim against Heyl that resulted from their investments in his company. But they have not established any such claim in any judicial or administrative proceeding.[5] Certainly, no such claim resulted from the Consent Order.

---

[5] In fact, appellants were denied such a claim in the 2010 Adversary Proceeding seeking an exception from discharge under section 523(a)(2)(A).

Finally, Appellants argue that by requiring a causal connection between the Consent Order and the claim of Appellants against Heyl, we are somehow rendering § 523(a)(19)(B)(iii) superfluous—apparently because it would simply be repeating in more detail the requirements of § 523(a)(19)(B)(i).  However, we fail to see how this interpretation of those two subsections of the statute benefits Appellants.  Both subsections are prefaced with the requirement that the claim "results…from" the Consent Order.

Accordingly, Appellants have failed to state a claim upon which relief can be granted under  § 523(a)(19).

## CONCLUSION

For the reasons stated above, we affirm the Bankruptcy Court.

_____